Wava COX *v.* Kay MILLER, as Administratrix of
the Estate of Walter Clark "Dub" Brassell

05-190                                   210 S.W.3d 842

Supreme Court of Arkansas
Opinion delivered June 23, 2005

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Leigh Anne Shults* and *Derrick W. Smith*, for appellant.

*Cross, Kearney & McKissic*, by: *Gene E. McKissic*, for appellee.

DONALD L. CORBIN, Justice. ■ The instant case is before this court on a petition for review from an Arkansas Court of Appeals' decision reversing the order of the Jefferson County Circuit Court imposing a constructive trust on certain real property held by Appellant Wava Cox. *See Cox v. Miller*, CA04-76 (Ark. App. February 2, 2005). In requesting review, Appellee Kay Miller asserted

that the court of appeals erred in its application of the doctrine of judicial estoppel. We granted the petition for review pursuant to Ark. Sup. Ct. R. 1-2(e). Accordingly, we consider the case as though it had been originally filed in this court. *Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002). We affirm the order of the trial court.

Sometime in 1985, Wava Cox began an extramarital affair with Walter "Dub" Brassell. The couple began living together in 1992, even though Brassell was still married to Mary Alice Brassell at the time. Dub Brassell filed for divorce in 1998. As part of the divorce proceeding, he was deposed regarding certain matters, including his ownership interest in certain real property. Brassell stated unequivocally that the only property that he owned with Cox was a one-and-a-half acre tract of land in Drew County that was adjacent to another one-and-a-half acre tract deer camp owned by Cox.[1] Brassell also denied that he had ever contributed to the purchase of any property or that there was any property owned by him and held in Cox's name.

The divorce proceeding culminated in a property-settlement agreement that provided that Brassell would retain possession of the Drew County property, while his ex-wife would retain the marital home. Thereafter, the Jefferson County Chancery Court entered an amended divorce decree on December 9, 1999.

Brassell died intestate on January 2, 2000, leaving as his sole heir his daughter Kay Miller. Miller was appointed as administratrix of her father's estate. On May 4, 2000, she filed a complaint, in her role as administratrix, against Cox, alleging that Brassell and Cox had jointly acquired certain real property and that at the time of her father's death, he "owned legal title and equitable interest" in those properties. The complaint sought that "a judicial determination be made of the nature of the property and the respective interest of Brassell and Cox." The properties set forth in the complaint included the deer camp located in Drew County, as well as property known as the Redfield Shopping Center.

A bench trial was held on March 19-20, 2003, and August 6, 2003. Tim Newton, a longtime friend of Brassell's testified about improvements that Brassell made to the deer camp. He also

---

[1] There is no dispute regarding the tract jointly purchased by Cox and Brassell in 1990. The dispute is over the tract known as the "deer camp" that was purchased by Cox in 1987 and titled solely in her name.

explained that Brassell always referred to the camp as "Our Place" and assumed that the camp belonged to Brassell and Cox. According to Newton, Brassell told him of several properties that he owned, including the Redfield Shopping Center. He stated that he and Brassell would pass the center, and Brassell would tell him that he owned it. Finally, Newton testified that he was with Brassell on several occasions when he would stop at the shopping center and have conversations with tenants about business matters.

Pete Harrison, who served under Brassell in the sheriff's office, testified that Brassell told him that he and Cox owned property in Redfield, including the Redfield Shopping Center. Harrison also testified that he often made deposits on Brassell's behalf into Cox's bank account.

Brenda Robinson, who prepared Brassell's income tax returns, testified that Brassell submitted documentation to her for his 1990 income tax return indicating that he had purchased an interest in the Redfield Shopping Center from Cox in July of 1990. According to that documentation, Brassell paid Cox $55,000.00 for an interest in the property. Robinson also explained that Brassell's subsequent returns claimed rental income and depreciation on the property in Redfield. Then, according to Robinson, beginning in 1998, Brassell no longer claimed rental income or depreciation.

Additionally, Miller introduced into evidence her father's income tax returns from 1990 through 1996 that reflected that Brassell owned the shopping center through listings on amortization and supplemental income schedules. She also introduced Cox's returns from 1992 though 1999, and they contained complementary documentation.

Also introduced at trial was a journal kept by Brassell that contained certain financial information, including transactions he conducted with Cox. One such entry, dated August 13, 1987, reflected that Brassell and Cox visited the deer camp in Drew County and that "we put $500.00 earnest money down. The price is $4,000.00." Numerous other entries reflected expenditures that Brassell made for improvements to the deer camp. There were also some cancelled checks introduced into evidence that had been written by Brassell to Cox.

Cox testified at trial and denied that she ever jointly owned any property with Brassell, other than the one-and-a-half acre tract in Drew County. She also testified that she purchased the deer

camp property in 1987 for $4,500.00. She further explained that she purchased the Redfield Shopping Center in 1990 for $110,000.00, after making a down payment of $22,914.96. She then denied ever entering into an agreement with Brassell to sell him an interest in the shopping center.

Cox also explained that she had been made a party to the Brassell's divorce proceeding in 1998, and in that case, introduced proof to establish that she did not own property with Brassell or hold property that was his in her name. She also denied any knowledge that during the divorce proceeding Brassell provided copies of income tax returns that had been purged of the interest he was paying her. She was eventually dismissed from the action. Cox admitted that beginning in 1990, her income tax records reflected that she sold an interest in the Redfield Shopping Center to Brassell and that she provided such information to her accountant. She claimed that she and Brassell falsified their income tax returns due to the fact that Brassell complained about the amount of income taxes he had to pay every year. According to Cox, she agreed to the falsification of records because she was trying to help Brassell. She again denied that Brassell ever purchased an interest in the shopping center. She also denied that Brassell did not list himself as an owner of the property in order to prevent his ex-wife from claiming an interest in the property during their divorce.

At the conclusion of all the evidence, Cox argued that the divorce proceeding was *res judicata* to the allegations that Cox and Brassell jointly owned property. Cox also reiterated that there were other affirmative defenses at issue, including estoppel and waiver. The trial court disagreed and ruled from the bench that Miller had proven the necessary elements to warrant the imposition of a constructive trust. The trial court then explained that one of the key factors to be considered in deciding this case was the credibility of the parties and that Cox's testimony was less than truthful and that she failed to be forthright at all times. Thereafter, the trial court announced that it was imposing a constructive trust on the deer camp and the Redfield Shopping Center and ordered Cox to convey a one-half interest in each property to Brassell's estate. The trial court further ordered Cox to provide an accounting for all rents and profits received from the Redfield Shopping Center since the date of Brassell's death. A written order memorializing the trial court's oral ruling was entered on October 9, 2003. Cox timely filed a notice of appeal, and Miller cross-appealed.

The case was submitted to the Arkansas Court of Appeals. The court of appeals agreed with Cox's argument that the elements of judicial estoppel were established, thus reversing the order of the trial court. The court specifically found that each of the elements of judicial estoppel had been satisfied, citing to this court's decision in *Dupwe v. Wallace*, 355 Ark. 521, 140 S.W.3d 464 (2004). The court of appeals ultimately concluded that "either Brassell's deliberate statements under oath or the estate's current attempt to claim the property is tantamount to a knowing misrepresentation." *Cox*, CA04-76, slip. op. at 6. Therefore, Miller, acting on behalf of the estate, was judicially estopped from asserting a position contrary to the claims asserted by Brassell during his prior divorce proceeding. Miller then petitioned this court for review.

For her first point on appeal, Cox argues that the trial court erred in finding that Miller, as adminstratrix of the estate of Dub Brassell, was not judicially estopped from asserting that Brassell held an ownership interest in property held in Cox's name. In support of her argument, Cox asserts that the elements of judicial estoppel were clearly established. Cox bases this assertion on the fact that Brassell testified during a deposition taken in the course of his divorce proceeding that he owned no property jointly with Cox. Thus, according to Cox, the estate, which stands in the shoes of Brassell, is judicially estopped from now arguing that Brassell was a joint owner of certain real property titled solely in Cox's name.

Before reaching the merits of Cox's argument on this point, this court must determine whether her argument regarding judicial estoppel is preserved for our review. Miller argues that the issue of judicial estoppel was never raised before the trial court and, therefore, cannot be argued on appeal. Cox counters that she preserved this argument as the doctrine of estoppel was raised as an affirmative defense. We agree with Miller.

In her answer to Miller's complaint, Cox asserted the affirmative defenses of collateral estoppel and *res judicata*. The answer further stated that "Defendant pleads as affirmative defenses latches, statute of limitations, set off, offset, estoppel, unclean hands, illegality, and waiver." Prior to trial, Cox moved for summary judgment, arguing that Brassell's deposition testimony that he never owned property with her was an admission by a party opponent and therefore warranted a grant of summary judgment in her favor. The trial court denied the motion for summary judg-

ment, and the matter proceeded to trial. Then, after Miller concluded her presentation of evidence, Cox moved for a directed verdict. She asserted various affirmative defenses, but with regard to the defense of estoppel, the following argument was made:

> The next motion is that — I have pled as an affirmative defense estoppel and waiver, Your Honor. And the argument is basically that the estate cannot — the estate steps into the shoes of its decedent. When the decedent takes action or takes inaction to protect his rights, . . . the estate can't come forward and then try to assert those rights. Mr. Brassell gave testimony, Your Honor, and indicated that he didn't own any property. There are no deeds on the disputed property that indicate he had any interest at all. There are no — there's no evidence of contracts. There's no evidence of payments — what I would call payments for purchase of property, Your Honor. It's pure speculation.
>
> . . . [T]he estate should be estopped from collecting these items, and, in fact, the decedent waived any claim to this by not titling the property in his name[.]

At the conclusion of all the evidence, counsel for Cox argued that the doctrine of *res judicata* prohibited the court from considering the issue of whether Brassell ever jointly owned property with Cox. Counsel specifically enumerated each of the elements of *res judicata* and explained how they applied to the facts in this case. Counsel then stated that: "[t]here are other affirmative defenses raised, such as estoppel and waiver." Counsel did not elaborate any further on the issue of estoppel, and he certainly did not specifically raise the defense of judicial estoppel or argue the four elements of that doctrine.

■ Thus, it appears from a review of the record that Cox never raised the argument that Miller was judicially estopped from arguing that her father owned property with Cox. A party asserts the doctrine of judicial estoppel by arguing that "a party may be prevented from taking inconsistent positions in successive cases with the same adversary." *Dupwe v. Wallace*, 355 Ark. 521, 529, 140 S.W.3d 464, 469 (2004) (quoting *Muncrief v. Green*, 251 Ark. 580, 583-84, 473 S.W.2d 907, 909 (1971)). Moreover, there are four specific elements that must be proven in order to establish a *prima facie* case of judicial estoppel: (1) a party must assume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case; (2) a party must

assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage; (3) a party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and (4) the integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken. *Dupwe*, 355 Ark. 521, 140 S.W.3d 464.

Reviewing the one specific instance in which Cox argued the defense of estoppel, it is apparent that she argued a general defense of waiver and estoppel and never raised the specific elements of judicial estoppel. This court explained the distinction between equitable estoppel and judicial estoppel in *Dupwe*. Citing to its previous decision in *Rinke v. Weedman*, 232 Ark. 900, 341 S.W.2d 44 (1960), the court explained:

> Under the doctrine of judicial estoppel, as distinguished from equitable estoppel by inconsistency, a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary of the assertion sought to be made. However, such estoppel does not operate if the original averment was made inconsiderately or mistakenly; it must have been made knowingly and free of inducement by the opposite party.

*Dupwe*, 355 Ark. at 530, 140 S.W.3d at 469 (quoting 31 C.J.S. § 121 at 390).

It is well settled that this court will not consider arguments raised for the first time on appeal. *See Ford Motor Co. v. Arkansas Motor Vehicle Comm'n*, 357 Ark. 125, 161 S.W.3d 788 (2004); *South Beach Bev. Co., Inc. v. Harris Brands, Inc.*, 355 Ark. 347, 138 S.W.3d 102 (2003). Further, this court has repeatedly held that an appellant may not change the grounds for objection on appeal, but is limited by the scope and nature of the objections and arguments presented at trial. *See, e.g., City of Fort Smith v. Didicom Towers, Inc.*, 362 Ark. 469, 209 S.W.3d 344 (2005); *Southern College of Naturopathy v. State ex rel Beebe*, 360 Ark. 543, 203 S.W.3d 111 (2005); *Barnes v. Everett*, 351 Ark. 479, 95 S.W.3d 740 (2003).

Additionally, the trial court did not specifically address the issue of judicial estoppel. In its ruling from the bench, the trial court specifically ruled that Cox failed to meet her burden

of proof with regard to the claim of *res judicata*, particularly the elements of issue preclusion and claim preclusion. The trial court then stated that "the affirmative defense of waiver and estoppel is denied." The written order also reflects that the trial court denied the affirmative defenses of *res judicata*, waiver, and estoppel. This court has repeatedly held that a party's failure to obtain a ruling is a procedural bar to the court's consideration of the issue on appeal. *See, e.g., Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004); *Finagin v. Arkansas Dev. Fin. Auth.*, 355 Ark. 440, 139 S.W.3d 797 (2003). It was Cox's burden to raise this issue and to obtain a specific ruling on it. Her failure to do so now precludes this court from considering the merits of her argument on this point.

For her second point on appeal, Cox argues that the trial court erred in imposing a constructive trust on the property known as the deer camp and the Redfield Shopping Center. Cox further argues that the trial court erred in ruling that she must deed a one-half interest in each piece of property to Brassell's estate. Miller counters that the trial court did not err in this regard and, additionally, that Cox presented no proof to contravene the trial court's finding that Brassell's estate was entitled to a one-half interest.

In *Nichols v. Wray*, 325 Ark. 326, 333, 925 S.W.2d 785, 789 (1996), this court set forth the requirements necessary to impose a constructive trust, stating:

> To impose a constructive trust, there must be full, clear, and convincing evidence leaving no doubt with respect to the necessary facts, and the burden is especially great when a title to real estate is sought to be overturned by parol evidence. The test on review is not whether the court is convinced that there is clear and convincing evidence to support the chancellor's finding but whether it can say the chancellor's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, and we defer to the superior position of the chancellor to evaluate the evidence. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. [Citations omitted.]

In the instant case, the trial court ruled from the bench that there was sufficient proof to satisfy the elements for imposing a constructive trust on the deer camp and the Redfield Shopping

Center. Specifically, the trial court found that the parties shared a confidential relationship. The trial court stated from the bench that "[t]he deed may be in the name of W.D. Cox, but it was held in her name just for record purposes only, but it was actually owned by both parties and held in her name." The trial court then ruled that Brassell owned a one-half interest in the two properties.

A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. *Scollard v. Scollard*, 329 Ark. 83, 947 S.W.2d 345 (1997). A constructive trust may be imposed when the elements necessary for constructive fraud are not present; it is not necessary to show a material misrepresentation of fact to recover under the theory of constructive trust. *Id.; Betts v. Betts*, 326 Ark. 544, 932 S.W.2d 336 (1996). The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, breach of a fiduciary duty, or wrongful disposition of another's property. *Id.* A constructive trust normally arises without regard to the intention of the person who transferred the property. *Id.*

The question for this court is whether the trial court clearly erred in determining that Cox and Brassell jointly owned the deer camp and the Redfield Shopping Center, despite the fact that the properties were listed in Cox's name alone. We think not, as there was ample evidence introduced at trial to support the trial court's finding in this regard. Extremely telling were Brassell's journal entries. In an entry dated August 13, 1987, Brassell wrote that he and Cox went to Monticello to purchase a deer camp, paying $500.00 in earnest money and noting that the purchase price was $4,000.00. There were additional entries reflecting the monies expended by Brassell on improvements for the deer camp, as well as labor that he performed on the camp. In addition, Cox admitted at trial that Brassell made improvements to the camp.

With regard to the Redfield Shopping Center, Brassell's income statement from the tax year 1990 indicated that he paid $55,000.00 for an interest in the shopping center. This amount is exactly one-half of the purchase price paid by Cox. Several years worth of subsequent returns further evidenced Brassell's ownership in the property, as he claimed rental income and depreciation. Moreover, several of Brassell's friends testified that at

various times he told them that he was an owner of the shopping center. The evidence that contradicted this was Cox's testimony that the amoritazation schedule and income tax returns had been knowingly falsified and that Brassell never owned an interest in the shopping center. The trial court specifically found Cox's testimony to be less than credible. It is axiomatic that this court gives due deference to the trial court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Carson v. Drew County*, 354 Ark. 621, 128 S.W.3d 423 (2003). Disputed facts and determinations of witness credibility are within the province of the factfinder. *Id.* In light of the deference owed to the trial court, we cannot say that it clearly erred in imposing a constructive trust.

Next, Cox argues that it was error for the trial court to find that the Brassell estate was entitled to a one-half interest in the Redfield Shopping Center because there was no evidence supporting the one-half division.[2] Miller counters that there was ample evidence supporting the division and that Cox presented no proof to rebut that evidence. We agree with Miller.

As previously stated, Brassell's 1990 income tax return stated that Brassell paid Cox $55,000.00 for an interest in the Redfield property, an amount equal to one-half of the purchase price. Cox's own return reflected the same. Cox testified that the returns were falsified and that Brassell never owned an interest in the shopping center. The trial court, however, found her testimony to be less than credible. We reiterate that we will defer to the court's superior ability to evaluate the credibility of evidence. *See Carson*, 354 Ark. 621, 128 S.W.3d 423. With that said, we cannot say the trial court clearly erred in this regard.

The order of the trial court finding that Brassell owned a fifty-percent interest in the deer camp and the Redfield Shopping Center and imposing a constructive trust on those properties is hereby affirmed. The court of appeals is reversed.

IMBER and DICKEY, JJ., not participating.

---

[2] Although Cox purports to question the one-half division of the deer camp in the heading of her point on appeal, all of her specific arguments are directed to the Redfield Shopping Center. We thus confine our analysis to that particular property.