BEVERLY ENTERPRISES – ARKANSAS, INC., d/b/a Batesville
Nursing and Rehabilitation Center *v.* Annette THOMAS,
as Permanent Guardian of the Estate of Helen Cook, an
Incapacitated Person, and all Others Similarly Situated

06-877                                                      259 S.W.3d 445

Supreme Court of Arkansas
Opinion delivered June 21, 2007

*Womack, Landis, Phelps, McNeill & McDaniel,* by: *Paul McNeill; Mitchell, Williams, Selig, Gates & Woodyard, PLLC,* by: *M. Samuel Jones, III; Hardin, Jesson & Terry,* by: *Rex M. Terry* and *Kirkman T. Dougherty; Williams & Anderson, PLC,* by: *Jess Askew III,* for appellant.

*Murphy, Thompson, Arnold, Skinner & Castleberry,* by: *Tom Thompson* and *Casey Castleberry; Callis L. Childs; Brian Brooks, Attorney at Law, PLLC,* by: *Brian Brooks; J. Scott Davidson; Bohrer Law Firm, LLC,* by: *Phil Bohrer* and *Scott Brady,* for appellee.

ROBERT L. BROWN, Justice. This is an appeal from an order granting a motion to certify the underlying class as a class action. We affirm the class certification.

On September 13, 2005, Annette Thomas, as permanent guardian of the estate of Helen Cook, an incapacitated person, and all others similarly situated, filed a Second Amended Complaint[1] in the Independence County Circuit Court against Beverly Enterprises, Inc.; Beverly Health and Rehabilitation Services, Inc.; and Beverly Enterprises - Arkansas, Inc., d/b/a Batesville Nursing and Rehabilitation Center ("Beverly"). The complaint alleged claims of medical malpractice, negligence, breach of contract, and violations of the Arkansas Residents' Rights Act, codified at Ark. Code Ann. §§ 20-10-1201 to -1209 (Repl. 2005), as to Helen Cook individually, and claims of breach of contract and violations of the Arkansas Residents' Rights Act, on behalf of all residents of the Batesville nursing home between September 13, 2000, and June 30, 2004. According to the complaint, hundreds of individuals were admitted as residents at the Batesville facility during the stated time period, and all entered into a Resident Admission Agreement with Beverly. The complaint asserts that pursuant to the agreement, as well as the Residents' Rights Act, Beverly was obligated to take care of the residents' basic daily needs. The complaint further alleges that Beverly failed to meet this obligation by, among other things, failing to properly and adequately staff the facility and provide a clean, safe living environment, which resulted in a loss of dignity for the residents. The complaint includes a request that a class be certified consisting of all residents and estates of residents who resided in the Batesville facility from September 13, 2000, to June 30, 2004, and a prayer for compensatory and punitive damages, attorneys' fees, interest, and costs.

Thomas moved for certification of this class of people and estates on March 10, 2006, and sought appointment by the circuit

---

[1] The original complaint was filed on May 16, 2005, and a First Amended Complaint was filed on August 12, 2005.

court as class representative.[2] Subsequently, Thomas moved to voluntarily dismiss without prejudice her claims against Beverly Enterprises, Inc. and Beverly Health and Rehabilitation Services, Inc., which the circuit court granted. A hearing was then held on the motion for certification of the class involving the Batesville nursing home. On May 1, 2006, the circuit court entered an order granting class certification with respect to the contract and statutory claims only. The circuit court specifically excluded claims for medical malpractice and personal injury from the class certification. On July 19, 2006, Thomas moved to sever her individual claims on behalf of Helen Cook for medical malpractice and negligence from the class claims.

In the circuit court's order, the court ruled that common questions of law and fact existed as to the class, which is estimated at approximately 489 class members, and that these common issues related to understaffing predominated over individual questions because all class members relied on the same Resident Admission Agreement and statutory law. The court further found that Thomas's claims arose from the same breach of agreement and violation of the Residents' Rights Act and were typical of the class. The court also found that Thomas and her counsel were adequate to represent the class. The court, as a final matter, ruled that a class action was the superior method to resolve the common liability issues fairly and efficiently.

In its appeal, Beverly contends that the circuit court erred in certifying the underlying case as a class action. More specifically, it asserts that a circuit court may only certify a class if the plaintiff meets his or her burden of proving the six criteria under Rule 23 of the Arkansas Rules of Civil Procedure. Beverly points out that Thomas alleges two causes of action for the class — one for violation of the Residents' Rights Act and one for breach of the class members' Resident Admission Agreement — and that both claims require that individualized questions of liability, causation, and injury for each resident be analyzed separately.

We begin by noting that circuit courts are given broad discretion in matters regarding class certification and that this court

---

[2] Thomas also filed a Third Amended Complaint that involved the same basic allegations but added as defendants all nursing home facilities in Arkansas owned and operated by Beverly and sought a class certification of all statewide residents of these facilities during certain specified dates. On July 19, 2006, Thomas filed a motion to withdraw these statewide class allegations. Based on the record before this court, this motion has not yet been decided.

will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *See Asbury Auto. Group, Inc. v. Palasack*, 366 Ark. 601, 237 S.W.3d 462 (2006). When reviewing a circuit court's class-certification order, this court reviews the evidence contained in the record to determine whether it supports the circuit court's decision. *See id.* This court does not delve into the merits of the underlying claims at this stage, as the issue of whether to certify a class is not determined by whether the plaintiff has stated a cause of action for the proposed class that will prevail. *See Am. Abstract & Title Co. v. Rice*, 358 Ark. 1, 186 S.W.3d 705 (2004).

Rule 23 of the Arkansas Rules of Civil Procedure provides the requirements for certification of a class action. That rule states:

> (a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative party are typical of the claims or defenses of the class, and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.

> (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

Ark. R. Civ. P. 23(a), (b) (2006). Thus, six requirements must be met before a lawsuit can be certified as a class action under Rule 23: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. *See Asbury Auto. Group, Inc., supra.* On appeal, Beverly is challenging the circuit court's ruling as to three of these criteria: predominance, superiority, and adequacy. As an initial matter, however, we must consider Thomas's assertion that Beverly is judicially estopped from challenging certification of this class.

*a. Judicial Estoppel*

Thomas argues with respect to this issue that Beverly is judicially estopped from challenging the certification of the pro-

posed Batesville class in Independence County because it conceded to certification of a class action for settlement purposes in a separate Bradley County Circuit Court case, *Estate of Hampton v. Beverly Enters.–Ark., Inc.*, CV 2004-95-3, which entailed identical claims against Beverly.

The doctrine of judicial estoppel has been discussed as follows by this court:

> A party asserts the doctrine of judicial estoppel by arguing that "a party may be prevented from taking inconsistent positions in successive cases with the same adversary." *Dupwe v. Wallace*, 355 Ark. 521, 529, 140 S.W.3d 464, 469 (2004) (quoting *Muncrief v. Green*, 251 Ark. 580, 583-84, 473 S.W.2d 907, 909 (1971)). Moreover, there are four specific elements that must be proven in order to establish a *prima facie* case of judicial estoppel. (1) a party must assume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case; (2) a party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage; (3) a party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and (4) the integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken. *Dupwe*, 355 Ark. 521, 140 S.W.3d 464.

*Cox v. Miller*, 363 Ark. 54, 62-63, 210 S.W.3d 842, 847 (2005).

We conclude, however, that Thomas's judicial-estoppel argument is not preserved for appeal. It appears that she did not raise the elements of judicial estoppel to the circuit court or obtain a ruling on the issue. Though she raised in her briefs in support of class certification and during the hearing the general point that Beverly had agreed to certification in the Bradley County Circuit Court case, which involved identical claims and issues, she never specifically argued the four elements of judicial estoppel to the circuit court, and, therefore, did not preserve the issue for our review. *See Cox, supra.* Furthermore, the circuit court did not specifically rule on the issue of judicial estoppel. This court will not consider arguments raised for the first time on appeal; nor will it consider arguments when a party has failed to obtain a ruling from the circuit court. *See Cox, supra.*

*b. Predominance*

Beverly argues that any common questions of fact or law that may be present in this case do not predominate over individual issues. It contends in this regard that the questions of fact the circuit court ruled were common to all class members cannot be resolved without detailed examinations of the individual circumstances of each class member. It specifically asserts that the predominant issues raised in this case involve only individualized issues of liability, causation, and the existence and extent of injury for each class member.

This court has said that "the starting point in examining the predominance issue is 'whether a common wrong has been alleged against' the defendant." *Am. Abstract & Title Co.*, 358 Ark. at 9–10, 186 S.W.3d at 710 (quoting *USA Check Cashers of Little Rock, Inc. v. Island*, 349 Ark. 71, 83, 76 S.W.3d 243, 249 (2002)). If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied even if the circuit court must subsequently determine individual damage issues in bifurcated proceedings. *See Farmers Ins. Co., Inc. v. Snowden*, 366 Ark. 138, 233 S.W.3d 664 (2006). This court has recognized that a bifurcated process of certifying a class to resolve preliminary, common issues and then decertifying the class to resolve individual issues, such as damages, is consistent with Rule 23. *See Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997). Furthermore,

> [t]he predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. In making this determination, we do not merely compare the number of individual versus common claims. Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings.

*Asbury Auto. Group, Inc.*, 366 Ark. at 610, 237 S.W.3d at 469 (quoting *Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 620, 232 S.W.3d 444, 452 (2006)).

The question then is whether there are overarching issues that can be addressed before resolving individual issues. *See Asbury Auto. Group, Inc., supra.* However, if preliminary issues are individualized, then the predominance requirement is not satisfied. *See id.* Indeed, a case that presents numerous individual issues regard-

ing the defendants' conduct, causation, injury, and damages will best be resolved on a case-by-case basis. *See Baker v. Wyeth-Ayerst Lab. Div.*, 338 Ark. 242, 992 S.W.2d 797 (1999).

We conclude that one main and preliminary overarching issue does exist in this case, which is whether the Batesville nursing facility was chronically understaffed so as to violate the residents' statutory and contractual rights. In its order, the circuit court found thirteen questions of fact and law and five issues that must be resolved, which are common to all class members. The five issues all involved understaffiing. The court then found that the common factual and legal issues predominated over the individual issues because all residents relied upon the same Resident Admission Agreement and statutory law to assert that systemic understaffing resulted in undignified living conditions for the residents, which breached that agreement and violated state law. The circuit court recognized that once these predominating issues were resolved, the class could be decertified, if necessary, to determine individual restitution and damage issues for class members for breach-of-contract and statutory violations.

We hold that the circuit court did not abuse its discretion in determining that the overarching issue of understaffing is common to the class and may be resolved before individual issues of damages must be addressed. The predominance criterion is satisfied in this case.

### c. Superiority

Beverly also contends that the circuit court erred in ruling that a class action is the superior method to litigate this case. It maintains that no efficiencies will result from class certification and that there are no barriers to individual lawsuits because the recovery for each individual resident could be substantial, and each resident could be awarded attorneys' fees and punitive damages.[3]

---

[3] Thomas asserts that Beverly did not raise the arguments to the circuit court that recovery for each class member could be substantial or that class members could receive punitive damages. It appears that the issue of substantial recovery was raised in passing in Beverly's brief in opposition to Thomas's motion for class certification. Though it argued that class members may be able to recover attorneys' fees in individual suits, it does not appear that Beverly ever argued to the circuit court that punitive damages might be awarded. This court does not consider arguments raised for the first time on appeal, *see Taylor v. Taylor*, 369

Regarding the superiority requirement, this court has recently said:

> Rule 23(b) requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. This court has held that the superiority requirement is satisfied if class certification is the more "efficient" way of handling the case, and it is fair to both sides. Where a cohesive and manageable class exists, we have held that real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. This court has further stated that when a trial court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the trial court to evaluate the manageability of the class.

*Asbury Auto. Group, Inc.*, 366 Ark. at 611, 237 S.W.3d at 469-70 (quoting *Van Buren Sch. Dist.*, 365 Ark. at 621, 232 S.W.3d at 452). Further, the "avoidance of a multitude of suits lies at the heart of any class action certification." *Am. Abstract & Title Co.*, 358 Ark. at 11, 186 S.W.3d at 711.

In this case, the circuit court did not abuse its discretion in ruling that a class action is the superior method to resolve the overarching issues common to the class members. The circuit court found that if Beverly were absolved of liability, the class litigation would end with "minimal expenditure of judicial resources." It further reasoned that without class certification, some of the claims could merely "go away" because many of the claims may involve only small amounts of damage and many of the class members may not be able to afford the litigation expenses of bringing their claims separately. It also noted that many of the class members were elderly, were unaware of their rights, and would not be able to file their claims against Beverly, if a class was not certified. The circuit court then explained that Beverly would benefit from the class action by avoiding 489 separate lawsuits addressing the same issues.

A class action is clearly a more efficient way of handling a case where there is a predominating, common issue to be resolved for all 489 class members. A class action is also fair to both

---

Ark. 31, 250 S.W.3d 232 (2007), and will not consider this particular argument in determining whether the superiority requirement was satisfied.

sides in this case, as it is a vehicle for all class members to have their claims heard, and Beverly will not have to defend against the same assertion of liability in a multitude of different lawsuits. The most efficient way to handle this case is to certify a class to determine the issue of whether Beverly systematically and chronically under-staffed the Batesville nursing facility and then decertify the class, if necessary, to determine individual restitution and damage claims as well as any defenses in separate proceedings. We hold that the circuit court did not abuse its discretion in ruling that a class action is the superior method to resolve this case.

### d. Adequacy

Beverly contends that Thomas is an inadequate class repre-sentative because she has severed her individual claims on behalf of Helen Cook for medical malpractice and negligence from the class claims and that she has scheduled her individual claims for trial ahead of the class claims. As a result, Beverly maintains that Thomas has breached her fiduciary duty to the class and that because the individual claims arise out of the same residency as the class claims, *res judicata* may bar the class claims if not asserted with Thomas's individual claims.

The adequacy criterion under Rule 23 requires that the class representatives "fairly and adequately protect the interests of the class." Ark. R. Civ. P. 23(a)(4). This court has held that three elements are required under the adequacy criterion:

> (1) the representative counsel must be qualified, experienced and generally able to conduct the litigation; (2) that there be no evidence of collusion or conflicting interest between the represen-tative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation.

*Asbury Auto. Group, Inc.*, 366 Ark. at 605, 237 S.W.3d at 465 (quoting *Am. Abstract & Title Co.*, 358 Ark. at 12, 186 S.W.3d at 712).

The circuit court found that the adequacy criterion of Rule 23 had been met. First, it found that the attorneys representing the class have extensive experience in litigating class actions and show a high degree of competency. Secondly, it ruled that Thomas was

an adequate class representative, as there was no conflict of interest between her and the class she wishes to represent. The circuit court stated it was convinced that Thomas would vigorously pursue the class claims as well as any additional individual claims that were not adverse to the class claims. It also reasoned that Thomas was familiar with the litigation and demonstrated a strong desire to serve as class representative.

■ Though Beverly did argue to the circuit court that Thomas was an inadequate class representative, it appears never to have raised the specific argument that it makes now regarding *res judicata* and its effect on class claims if Thomas pursues her individual claims first. Further, the circuit court did not rule on whether Thomas's severance of her medical malpractice and negligence claims would bar her ability to bring class claims or whether the severance constituted a breach of her fiduciary duty to the class members. To reiterate, this court will not consider arguments not raised before the circuit court and ruled upon. *See Taylor, supra.* Accordingly, we will not address this precise point.

■ Regarding the adequacy of the class representative in general, this court has said that the " 'adequacy of representation' element is satisfied if the representative displays a *minimal* level of interest in the action, familiarity with the challenged practices, and ability to assist in litigation decisions." *Asbury Auto. Group, Inc.,* 366 Ark. at 606, 237 S.W.3d at 466 (quoting *Direct Gen. Ins. Co. v. Lane,* 328 Ark. 476, 485, 944 S.W.2d 528, 532 (1997)). Thomas testified in her deposition that she understood that as the class representative, she would be responsible for speaking for the group and that she would do what she could to make sure the class members received restitution damages for breach of contract and for the diminished quality of life they endured. She further testified that she believed that her mother's injuries, which occurred while she was residing in the Batesville nursing facility, were the result of insufficient staff and supplies. Based on her testimony, there is nothing to suggest that Thomas would not be an adequate class representative.

*e. Kohn*

We address, as a final point, Beverly's reliance on *Kohn v. American Housing Foundation, Inc.,* 178 F.R.D. 536 (D. Colo. 1998), where a federal district court in Colorado ruled that certification was not warranted for a class of current and former residents of a

nursing home who filed claims against the nursing home for violations of the Colorado Consumer Protection Act, breach of a Medicaid contract, and negligence based on understaffing and environmental problems at the nursing home. The federal district court ruled that common questions of fact and law did not predominate over individualized issues. That court reasoned that class members were individuals who may or may not have been exposed to the unlawful conduct and that those who were exposed would not all be harmed in the same way. The court recognized that certification based solely on the issue of liability may be appropriate in some cases, but not where the class members are surrounded by differing circumstances.

The *Kohn* case, though, is distinguishable from the instant case in that the federal district court used a "rigorous analysis" under Federal Rule 23 in determining whether the certification criteria had been met. *Kohn*, 178 F.R.D. at 539. This court does not require that the circuit court conduct a "rigorous analysis" under our Rule 23. *Tay-Tay, Inc. v. Young*, 349 Ark. 675, 683, 80 S.W.3d 365, 368 (2002). Furthermore, the plaintiffs in *Kohn*, *supra*, included a negligence claim where a finding of causation for each class member was necessary to establish liability. In the instant case, the circuit court specifically excluded claims for medical malpractice and personal injury.

The case of *Fleming v. Barnwell Nursing Home & Health Facilities, Inc.*, 766 N.Y.S.2d 241 (App. Div. 2003), appears more persuasive to this court. In that case, a New York appellate court held that class certification was not proper for nursing-home residents who sought to file a negligence claim against a nursing home because individual questions involving causation and injury existed. However, the court further held that certification was warranted where the class members asserted claims pursuant to New York's Public Health Law § 2801-d, which allowed private causes of action against a nursing home to recover for the deprivation of certain rights. The court ruled that common questions regarding the nursing home's violation of the Public Health Law predominated over individual issues and stated that "[t]he predominance requirement may be satisfied even if not all class members were subjected to all the improper conduct." *Fleming*, 766 N.Y.S.2d at 243.

The class in the case at hand has been certified only for purposes of bringing statutory and contractual claims, not personal-injury claims. Furthermore, individual damages incurred

by each class member will only be relevant during the second phase of this litigation, if necessary, and not during the liability phase. We conclude that the circuit court did not err in granting Thomas's motion for class certification.

Affirmed.