2009 Ark. 458

**Bernice McWHORTER, Appellant,**

v.

**Gene McWHORTER, Appellee.**

No. 08–1089.

Supreme Court of Arkansas.

Oct. 1, 2009.

Rehearing Denied Nov. 5, 2009.

Bernice McWhorter, pro se.

Roscopf & Roscopf, P.A., by: Charles B. Roscopf, Helena, for appellee.

JIM GUNTER, Justice.

On appeal for the third time in this court, appellant Bernice McWhorter appeals the trial court's order reducing appellee's child support arrearages to a judgment of $13,915.17, plus interest. Appellant argues that the trial court erred in (1) finding that the trial court's prior order was not a judgment; (2) modifying the 2003 mandate issued by this court; (3) not applying the five-year statute of limitations; (4) allowing appellee to present evidence of payments made in order to offset the amount owed; and (5) not applying judicial estoppel. Because this is a subsequent appeal following an appeal that has been decided by this court, we have jurisdiction pursuant to Ark. Sup.Ct. R. 1–2(a)(7). We find no error and affirm.

Appellant and appellee were divorced in 1993. Under the divorce decree, custody of the couples' two children was awarded to appellant, and appellee was ordered to pay child support. In 1995, the trial court modified its order for child support and ordered appellee to pay child support in the amount of $465 per month. On February 15, 1996, appellant filed a motion for increase in child support. Two years later, a trial was held in April 1998, and on August 18, 1998, the trial court issued a letter opinion that included appellee's gambling winnings but not his gambling losses in the calculation of child support. Appellee filed a motion for findings pursuant to Ark. R. Civ. P. 52(a), which was not ruled upon, and appellee appealed the trial court's ruling to the Arkansas Court of Appeals. The court of appeals reversed for failure to comply with Rule 52(a) and remanded for compliance with that rule. *See McWhorter v. McWhorter*, 70 Ark. App. 41, 14 S.W.3d 528 (2000) (*McWhorter I*).

After the trial court entered a supplemental order, appellee again appealed asserting that gambling winnings should not be considered income for child support purposes and that, if they are, gambling losses should be credited against those winnings. This court agreed with appellee that gambling losses, if proven, should be considered in the calculation of income, and we remanded for further proceedings to prove gambling losses and to recalculate disposable income. *See McWhorter v. McWhorter*, 346 Ark. 475, 58 S.W.3d 840 (2001) (*McWhorter II*).

On remand, the trial court held a hearing on recalculation of income on December 14, 2001. Following the hearing, the trial court found that appellee had failed to

carry his ₃burden of proving his gambling losses for the period in question and did not allow for any losses. In an order dated February 6, 2002, the trial court calculated appellee's net monthly income and, based on this calculation, set child support for the period of February 1997 through May 31, 1998 as $799 per month, and for the period of June 1, 1998 through May 31, 2001 as $522 per month. Appellee appealed from this order, but the trial court was affirmed by this court on February 6, 2003. *See McWhorter v. McWhorter*, 351 Ark. 622, 97 S.W.3d 408 (2003) (*McWhorter III* ).

On November 10, 2004, appellant filed a motion for order to show cause and for contempt, asserting lack of "payments toward the satisfaction of the judgment." Shortly thereafter, appellee filed for bankruptcy, delaying a hearing on appellant's motion for over two years, but a hearing was finally held on February 23, 2007. At the hearing, appellant asked the court to calculate the amount owed to her with no credit toward arrearage. Appellee's counsel objected, arguing that the monthly child support payments of $465, made by appellee from 1995 to 2001 pursuant to court order, should be taken into account. Appellant insisted that considering any credit that might be given to appellee was the equivalent of retrying the case and thus barred by res judicata.

On May 18, 2007, the court issued a letter opinion finding that the child support arrearages owed by appellee had not previously been reduced to judgment and granting appellant a judgment of $8,476 plus interest. In this opinion, the trial court addressed ₄appellant's contention that credit should not given to appellee for past child support payments:

The Plaintiff, by her pleadings and the briefs submitted subsequently to the hearing, seems to be alleging that the Defendant should not be given credit for the child support payment he has in fact made. As a court of equity, such an action will not be performed by this court.

Appellant raised several objections to the judge's findings, and subsequent letter opinions addressing these issues were filed on June 14, 2007, August 13, 2007, December 14, 2007, and January 3, 2008.[1] A second hearing was also held on November 23, 2007, at which appellant again argued that appellee should be given no credit for previous child support payments. Finally, on January 29, 2008, the court entered a judgment on mandate, which incorporated all previous letter opinions and awarded appellant $8,735.20 plus $5,179.97 in interest, for a total of $13,915.17, with additional interest to accrue at the rate of ten percent per annum. After appellant's motion to amend findings of fact was denied, appellant filed a notice of appeal on March 27, 2008. We set out our standard of review in child support cases in *McWhorter II*:

We review chancery cases de novo on the record, and we will not reverse a finding of fact by the chancery court unless it is clearly erroneous. In reviewing a chancery court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. As a rule, when the amount of child support is at issue, we will not reverse the chancellor absent an abuse of discretion. However, a chancellor's conclusion of law is given no deference on appeal.

₅351 Ark. at 625–26, 97 S.W.3d at 411 (internal citations omitted).

---

1. The January 3, 2008 letter opinion was not included in the record.

For her first point on appeal, appellant asserts that the trial court's ruling that the February 6, 2002 order did not satisfy the formal requirements for a judgment was clearly erroneous. Had that order not been a final judgment, appellant argues, this court would not have reached the merits of the appeal. Appellee contends that appellant is confusing the meaning of a "final order" for appeal purposes with a "judgment" for collection purposes. Appellee also argues that the court was correct in its finding that the additional amount of support owed by appellee had not been reduced to judgment. While the February 6, 2002 order did make findings of appellee's disposable income and the amount of monthly child support he should have paid for the time period of February 1997 through May 2001, the total amount due to appellant was not calculated in terms of dollars and cents, which is required under Ark.Code Ann. § 16–65–103 (Repl.2005).[2] In its order, the trial court relied upon the definition of a judgment found in *Thomas v. McElroy*, 243 Ark. 465, 468, 420 S.W.2d 530, 532 (1967) (internal citations omitted):

> Formal requirements for a judgment in Arkansas are few. It is the final determination of the right of parties in an action. The amount of the judgment must be computed, as near as may be, in dollars and cents. A judgment must specify clearly the relief granted or other determination of the action. The few basic requirements must be met and the judgment must clearly show that it is the act of the law, pronounced and declared by the court upon determination and inquiry. While a rather technical application was made of this rule in

the cited case, strict formality in language used to express the adjudication of the court is not necessary and a 'judgment' will be tested by its substance, not its form.

The confusion on this point stems from the difference between an order that establishes a monthly child support obligation (in this case, what the monthly child support obligation should have been) and an order that has been reduced to judgment. A child support order, while a final order for appeal purposes, is distinguishable from an order that has been reduced to judgment. While not explicitly stated, a difference between the two is clearly indicated by both statutory language and case law.

Arkansas Code Annotated section 9–14–234(j) (Repl.2008), which governs arrearages and the finality of judgments, provides that nothing in that section "shall be construed to limit the jurisdiction of the court to proceed to enforce a decree, judgment, or order for the support of a minor child or children through contempt proceedings *when the arrearage is reduced to judgment.*" (Emphasis added.) This clearly implies that reducing an order of child support to judgment is an additional step in the collection process and is not simply contained within an order setting out the amount of monthly child support due. Indeed, section 9–14–235(e) defines "judgment" as "unpaid child support and medical bills, interest, attorney's fees, or costs associated with a child support case when such has been reduced to judgment by the court or become a judgment by operation of law."

2. Section 16–65–103 states:

In all judgments or decrees rendered by any court of justice for any debt, damages, or costs, and on all executions issued thereon, the amount shall be computed, as near as may be, in dollars and cents, rejecting smaller fractions. No judgment or other proceeding shall be considered erroneous for such an omission.

This court has also recognized the procedure of an order being reduced to judgment. In *Luckes v. Luckes*, 262 Ark. 770, 561 S.W.2d 300 (1978), a husband and wife were divorced in 1969, and husband was ordered to pay $150 per month in alimony. Husband later moved to California and fell behind in payments, and wife obtained an order in California directing husband to pay $65 per month into the registry of the California court, which was then forwarded to the clerk of the Arkansas court. In 1976, wife filed a petition in Arkansas asking that husband be held in contempt of court and that the arrearages be reduced to judgment. The trial court ultimately awarded a judgment of $5,782.91, and a writ of garnishment was issued against husband's retirement pay.[3] Similarly, a number of opinions from the Arkansas Court of Appeals, which decides the majority of family law cases in this state, also recognize this distinction. *See, e.g., Young v. Young*, 2009 Ark. App. 556, 2009 WL 2778046 (highlighting the trial court's order that reflected the defendant's amount of arrearage but left open the option of reducing that amount to judgment at a later date); *Laroe v. Laroe*, 48 Ark. App. 192, 893 S.W.2d 344 (1995) (explaining that the appellee had petitioned the trial court to hold the appellant in contempt for nonpayment of child support, owed under an existing order, and later filed a second petition requesting the delinquent child support be reduced to judgment). Consequently, we conclude that the trial court did not err in stating that appellee's additional child support obligation had not yet been reduced to judgment.

Appellant next asserts that the trial court erred in allowing evidence of past child support payments and crediting those payments toward the final judgment.[4] Appellant first contends that allowing such evidence constituted a violation of the mandate issued by this court after *McWhorter III*. A lower court is bound by the judgment or decree of a higher court as law of the case and must carry the decision of the higher court into execution pursuant to the mandate issued by that court. *Pulaski County v. Ark. Democrat–Gazette, Inc.*, 371 Ark. 217, 264 S.W.3d 465 (2007). In 2003, this court affirmed the trial court's ruling that appellee had failed to prove his gambling losses and affirmed the trial court's use of appellee's 1998 income tax return for child support purposes. Our mandate, issued March 17, 2003, simply stated that the trial court was affirmed. The proceedings that led to the present appeal, however, which were in essence a reduction of appellee's arrearages to a judgment, did not deviate from the trial court's original order setting arrearages at $799 per month and $522 per month for different time periods or this court's mandate that left those findings undisturbed. The trial court used those figures as a starting point but also calculated in the court-ordered child support payments of $465 per month that appellee had continued to make through 2001. The trial court awarded appellant a judgment representing the difference between what appellee should have paid and what he actually paid, and appellant has failed to demonstrate that this award was clearly erroneous or a violation of the mandate.

---

3. We also note that, in computing the judgment amount, the trial court credited husband's California payments of $65 per month in reduction of the Arkansas obligation of

$150 per month, and this court found such credit was proper.

4. This argument encompasses appellant's second and fourth arguments on appeal.

■ Appellant also asserts that allowing evidence of past child support payments was in error because appellee never filed a motion for relief under Ark. R. Civ. P. 8(a)(1), which governs the filing of complaints, counterclaims, crossclaims, and third party claims. Appellant has failed, however, to explain why Rule 8 applies, as the filing of a counterclaim or any other pleading was not required for appellee to submit evidence of his prior child support payments at a hearing to reduce his arrearages to judgment.

■ And finally, appellant argues that the introduction of evidence of previous child support payments violated res judicata. The concept of res judicata has two facets, one being issue preclusion and the other claim preclusion. *Carwell Elevator Co., Inc. v. Leathers*, 352 Ark. 381, 101 S.W.3d 211 (2003). Under claim-preclusion, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim. *Id.* Res judicata bars not only the relitigation of claims which were actually litigated in the first suit, but also those which could be litigated. *Id.* Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.* Issue preclusion, or collateral estoppel, bars relitigation of issues. *Id.* In *State v. Thompson*, 343 Ark. 135, 34 S.W.3d 33 (2000), we stated of collateral estoppel:

When an issue of ultimate fact has once been determined by a valid and final judgment, collateral estoppel precludes relitigation of that issue between the same parties in any future proceeding. In order to establish collateral estoppel, proof of the following is required: 1) the issue sought to be precluded must be the same as that involved in the prior litigation; 2) the issue must have been actually litigated; 3) the issue must have been determined by a final and valid judgment; and 4) the determination must have been essential to the judgment.

*Thompson*, 343 Ark. at 139–40, 34 S.W.3d at 36 (internal citations omitted).

■ Appellant's argument focuses on collateral estoppel; she argues that appellee previously had the chance to litigate the issue of arrearages and should not have been allowed to re-litigate the issue by asking for credit for past payments. According to appellant, this case has "always been about the same issues, payment, credit, and arrearage. Appellee was adequately represented by counsel at all times and had a full and fair opportunity to litigate." Appellant contends that if appellee believed he was entitled to credit, he could have requested such credit at the hearing to recalculate appellee's income held on December 14, 2001. Appellant also asserts that appellee only asked for credit toward his arrearage in a motion for reconsideration, filed February 1, 2002, and that motion was denied by the trial court in its February 6, 2002 order. Appellant argues that appellee did not appeal that ruling and, therefore, is barred from re-litigating the issue.[5]

5. In support of her position, appellant cites two cases: *Slaton v. Slaton*, 336 Ark. 211, 983 S.W.2d 951 (1999) (*Slaton II*), and *Office of Child Support Enforcement v. Pyron*, 89 Ark. App. 161, 201 S.W.3d 28 (2005). *Slaton II* followed this court's decision in *Slaton v. Slaton*, 330 Ark. 287, 956 S.W.2d 150 (1997) (*Slaton I*), which found that the trial court did not have jurisdiction to enter a previous order modifying custody and child support. *Slaton II* is distinguishable from the present case, however, as it involved a father seeking to recover some child support payments made while not under court order, and this court

A full analysis of this argument requires a more detailed review of the past litigation in this case. The proceedings that led to the present appeal began in February 1996, when appellant filed a motion to increase appellee's existing child support obligation of $465 per month. After this court's remand of *McWhorter II*, the trial court held a hearing on recalculation of income on December 14, 2001. A letter opinion was issued on January 17, 2002, in which the trial court found appellee had not sufficiently proven his gambling losses and set his imputed monthly income and resulting child support obligation accordingly. On February 1, 2002, appellee filed a motion for reconsideration, requesting the court to reconsider its ruling regarding proof of gambling losses and to make additional findings on how the court calculated his adjusted gross income. Appellee also requested "credit for the judgment in his favor resulting from the mandate on the first reversal."[6] In its February 6, 2002 order, the trial court denied appellee's motion and stated: "The Defendant, in his motion for reconsideration requested credit toward any arrearages. This request was made for the first time in that pleading. As this Plaintiff has not had prior opportunity to address that issue, for the purposes of this order it must be denied."

Now, in the present appeal, appellant is characterizing this ruling as dispositive of the issue of whether appellee is entitled to credit for previous child support payments made from 1997 to 2001. However, as is clear from the recitation of proceedings above, this issue was never in contention prior to the trial court's February 6, 2002

order. The purpose of the proceedings after this court's remand in *McWhorter II* was to determine what appellee's monthly obligation *should have been* for the time periods in question. A determination of the *total additional amount* due to appellant did not occur until the trial court's final order dated January 3, 2008, and such a determination necessarily involved consideration of payments appellee had made under the existing court order in place during those time periods. Contrary to appellant's assertions, whether appellee had continued to make the court-ordered payments of $465 per month, and whether those payments would be credited against the final judgment, was never at issue prior to the February 6, 2002 order or this court's 2003 opinion and mandate. We thus find that appellant has failed to show that the issue sought to be precluded, namely credit for past child support payments, was the same as that involved in the prior litigation; that the issue was actually litigated; that the issue was determined by a final and valid judgment; and that the determination was essential to the judgment. *See Thompson, supra.* In sum, we find that appellant has failed to prove that collateral estoppel should apply and therefore affirm on this point.

For her next point on appeal, appellant asserts that the trial court erred in not applying the five-year statute of limitations found in Ark.Code Ann. § 9–14–236(c) (Repl.2008), which states that an action to collect accrued child support arrearages may be brought "at any time up to and including five (5) years beyond the date the child ... reaches eighteen (18)

---

ruled those payments were voluntary and thus he was not allowed a "credit" for those payments. Appellant's citation to *Pyron* is equally unconvincing, as the subject of *Pyron* was a Rule 60 motion.

**6.** This request was apparently in reference to the mandate issued by the court of appeals, which directed Bernice McWhorter, the appellee in that appeal, to pay Gene McWhorter $882.80 for costs on appeal.

years of age." Appellant asserts that the couple's older child turned twenty-three in February 2003, and the younger child turned twenty-three in August 2006, but at no time did appellee file any claim for credit for payments made until January 2007, which is outside the five-year statute of limitations. Therefore, argues appellant, appellee should be barred from claiming any credit for these past payments.

Appellee counters that the above-cited statute of limitations has no application to these facts, because the limitation applies to "actions," which are defined as "any complaint, petition, motion, or other pleading seeking recovery of accrued child support arrearages." § 9–14–236(a)(2). Appellee has filed no such action; he only requested that the court recognize and credit him the payments he made pursuant to court order during the relevant time periods that child support was due. In its January 28, 2009 opinion, the trial court found that the statute of limitations had no application to this case. We agree that the five-year statute of limitations has no relevance to these facts and affirm on this point.

For her final point on appeal, appellant argues that judicial estoppel should have barred certain arguments made by appellee below. The doctrine of judicial estoppel can be explained as follows:

A party asserts the doctrine of judicial estoppel by arguing that "a party may be prevented from taking inconsistent positions in successive cases with the same adversary." *Dupwe v. Wallace*, 355 Ark. 521, 529, 140 S.W.3d 464, 469 (2004) (quoting *Muncrief v. Green*, 251 Ark. 580, 583–84, 473 S.W.2d 907, 909 (1971)). Moreover, there are four specific elements that must be proven in order to establish a *prima facie* case of judicial estoppel. (1) a party must as-

sume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case; (2) a party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage; (3) a party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and (4) the integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken. *Dupwe*, 355 Ark. 521, 140 S.W.3d 464.

*Beverly Enterprises–Arkansas, Inc. v. Thomas*, 370 Ark. 310, 316, 259 S.W.3d 445, 449 (2007) (quoting *Cox v. Miller*, 363 Ark. 54, 62–63, 210 S.W.3d 842, 847 (2005)).

In the present case, appellant claims that appellee has taken an inconsistent position with regard to what issues were decided upon remand in 2001; appellant also claims the appellee's assertion that he owes her $8,476 is inconsistent with his claim during his bankruptcy proceeding that appellant was seeking $72,000 in arrearages. Appellant argues that appellee misled both the trial court and the bankruptcy court and that appellee "has a history of manipulating the legal system and changing testimony to benefit himself."

We find that appellant's argument is not preserved for this court's review. While she did raise the general argument below that appellee was taking a position with regard to the amount of arrearages that was inconsistent with his bankruptcy filings, and that he was attempting to manipulate the court, appellant failed to specifically argue the four elements of judicial estoppel to the trial court, nor did she obtain a ruling on the issue. This court will not consider arguments raised for the first time on appeal and will not consider

arguments when a party has failed to obtain a ruling from the trial court. *Beverly Enterprises, supra.* We therefore affirm on this point.

Affirmed.

CORBIN, IMBER, and DANIELSON, JJ., dissent.

PAUL E. DANIELSON, Justice, dissenting.

The circuit court clearly erred. Both the circuit court and the majority of this court err in the conclusion that the circuit court's February 6, 2002 order was not a judgment. In that order, the circuit court found that a change of circumstance required an increase in child support, determined Mr. McWhorter's yearly income, and ordered child support paid for the past years of 1997–2001. Of important note is the fact that these amounts were not for future child-support obligations, but for past child-support obligations, as the children had already reached majority at the time of the circuit court's order. Accordingly, the circuit court's order was a final judgment of arrearages.

Whether or not an order of arrearages is a final judgment is governed by Arkansas |₁₆Code Annotated § 9–14–234 (Repl. 2008). The majority relies on subsection (j) of that statute as support for its conclusion that the circuit court's order of 2002 had to be "reduced to judgment" before it constituted a judgment. However, the majority's quotation of that subsection omits the very language specifically referring to the definition of a final judgment. The entirety of that subsection provides:

Nothing in this section shall be construed to limit the jurisdiction of the court to proceed to enforce a decree,

judgment, or order for the support of a minor child or children through contempt proceedings when the arrearage is reduced to judgment *under subsection (b) of this section.*

Ark.Code Ann. § 9–14–234(j) (emphasis added). Thus, to determine whether an arrearage has been "reduced to judgment," one must look to subsection (b) of the statute, which provides:

(b) Any decree, judgment, or order that contains a provision for the payment of money for the support and care of any child or children through the registry of the court or the Arkansas child support clearinghouse shall be final judgment subject to writ of garnishment or execution as to any installment or payment of money that has accrued until the time either party moves through proper motion filed with the court and served on the other party to set aside, alter, or modify the decree, judgment, or order.

Ark.Code Ann. § 9–14–234(b). According to the plain language of subsection (b), the circuit court's order of 2002 was a final judgment, as it clearly contained a provision for the payment of money for the support and care of Mr. McWhorter's children that had accrued.[1] |₁₇Because the circuit court's 2002 order was a final judgment, the circuit court clearly erred in concluding that "the child support arrearages owed by this Defendant ha[d] not been reduced to Judgment."

Moreover, because the circuit court's order was a final judgment, the circuit court erred in modifying it and providing Mr. McWhorter credit for payments claimed to have been made during the past periods at issue. Subsection (c) of section 9–14–234

---

1. Indeed, the finality of the judgment was recognized by the Phillips County Circuit Court Clerk, who issued a writ of garnish- ment in this matter on April 12, 2004, based upon the circuit court's judgment of February 6, 2002.

specifically precludes a circuit court from setting aside, altering, or modifying a judgment that has accrued unpaid support prior to the filing of the motion. Because the amounts determined by the circuit court in its 2002 order had already accrued, the circuit court was precluded from modifying those amounts.

But in addition, the law-of-the-case doctrine precluded the circuit court's recognition of Mr. McWhorter's claim for credits. The doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided on appeal. *See Jones v. Double "D" Props.,* 357 Ark. 148, 161 S.W.3d 839 (2004). The doctrine provides that a decision of an appellate court establishes the law of the case for the circuit court upon remand and for the appellate court itself upon subsequent review. *See id.* The doctrine serves to effectuate efficiency and finality in the judicial process and its purpose is to maintain consistency and avoid reconsideration of matters once decided during the course of a single, continuing lawsuit. *See id.* It further provides that the decision of the first appeal becomes the law of the case, and is conclusive of every question of law or fact decided in the former appeal, and also of those which might have been, but were not, presented. *See Slaton v. Slaton,* 336 Ark. 211, 983 S.W.2d 951 (1999).

While there was no remand in this case following our decision in *McWhorter v. McWhorter,* 351 Ark. 622, 97 S.W.3d 408 (2003) (*McWhorter III* ), we did affirm the circuit court's 2002 order. Part of that order, as already noted above, set forth the circuit court's determination of Mr. McWhorter's arrearages for the years 1997–2001, which Mr. McWhorter failed to challenge on appeal. Because it was at the hearing prior to that order that Mr. McWhorter could have, and should have,

requested any credits for amounts of child support already paid during the periods at issue, because he did not, and because he failed to challenge that portion of the circuit court's order on appeal in *McWhorter III,* he was precluded from doing so before the circuit court during the hearing on Ms. McWhorter's motion for contempt under the law-of-the-case doctrine.

It is for these reasons that the circuit court clearly erred in issuing the order that is the subject of this appeal. Because I would reverse and remand this matter, I respectfully dissent.

CORBIN and IMBER, JJ., join.