ARK.] 1059

GEORGE LEE TATUM *v.* K. W. RESTER

5-4106                                         412 S. W. 2d 293

Opinion delivered February 20, 1967
[Rehearing denied March 27, 1967.]
[Supplemental opinion on rehearing delivered March 27, 1967
242 Ark. 271. 412 S. W. 2d 293.]

1. NEGLIGENCE—TRIAL, JUDGMENT & REVIEW—INSTRUCTION ON STANDARD OF CARE.—In action for damages for injury allegedly caused by appellee's negligence, in view of the record the giving of an instruction which defined the standard of care regarding the condition of appellee's premises was error.

2. JURY—VOIR DIRE EXAMINATION—DISCRETION OF TRIAL COURT, ABUSE OF.—Court did not abuse its discretion in refusing to permit appellant on voir dire examination of the jury to propound certain questions, although the questions were not per se objectionable if asked in good faith subject to, reasonable control by trial court.

Appeal from Union Circuit Court, *Melvin Mayfield,* Judge; reversed.

*Bernard Whetstone,* for appellant.

*Shackleford & Shacklefor,* for appellee.

PAUL WARD, Justice. This is a personal injury suit. While George Lee Tatum, a five year old boy (hereafter referred to as appellant), was playing with the children of K. W. Rester (appellee) at Rester's home he was injured when appellee was attempting to back his car out of the carport.

Suit was filed by George's father (who, having died later, was replaced by a guardian—Robert E. Rorex) against appellee to recover damages for the injury allegedly caused by the negligence of appellee. A jury trial resulted in a verdict for appellee.

For a reversal appellant relies on two points which we will discuss in reverse order from that presented in his brief.

*One.* This point relates to certain instructions given and refused by the trial court, but first it is necessary to set out a summary of the pertinent facts which are not in dispute

Appellant lives with his family who are close neighbors of appellee who has a wife and small children. The children of the two families frequently play together in their yards. On the day of the accident appellant was playing with appellee's children in his yard. It is not contended that he was invited over on this particular occasion nor is it contended he was a trespasser. Apparently it is agreed that appellant was a licensee or an invitee.

On that occasion appellee was washing his car in the carport, aware of the presence of the children in his yard and that they were nearby. When appellee decided he would back his car clear of the carport to finish the job he told the children of his intention and also told them to keep out of the way. Appellee then proceeded to back the car, holding the left front door open with his hand. In doing so the edge of the open door struck appellant's hand while it was resting on the post which supported the rear corner of the carport.

At the close of the testimony appellant requested the court to give the following instruction:

"You are instructed that under the circumstances that existed in the present case that K. W. Rester owed the duty to George Lee Tatum to use ordinary care not to cause injury to George Lee Tatum."

The trial court refused the above instruction over the objection of appellant, and then gave to the jury the following instruction over appellant's objection.

"You are also instructed that at the time of the occurence here involved the Defendant, K. W. Rester, did not have a duty to use ordinary care for the safety of the Plaintiff, George Lee Tatum, unless he knew or reasonably should have known that George Lee Tatum was in a position of danger."

"And, of course, if the Defendant did know or rea-

sonably should have known that George Lee Tatum was in a position of danger at the time of the occurence, then the Defendant had a duty to use ordinary care to avoid injury to him.''

It is our conclusion the court erred both in refusing and giving the above instructions. This conclusion is supported by the case of *Linxwiler* v. *El Dorado Sports Center, Inc.*, 233 Ark. 191, 343 S. W. 2d 411.

In the above cited case this same issue was raised under similar circumstances. Appellant (a boy eighteen years old) stopped in a bowling alley and chatted with a nineteen year old employee of the alley. They employee picked up a pistol which a policeman had checked at the counter and accidentally shot and injured the appellant. The trial court, in that case, instructed the jury as follows:

> '' 'The owner of a premises or place of business is under no duty to protect one who goes upon the premises or in the place of business as a volunteer for his own pleasure, privacy, or curiosity.' ''

On appeal to this Court we reversed the judgment in favor of appellee, stating, among other things:

> ''This instruction should not have been given, for it embodies a rule of limited liability that is properly applicable to a landowner's responsibility for the condition of his premises rather than to his liability for the conduct of his employees.''

Following the above statement we said:

> ''The condition of the appellee's bowling center had nothing to do with Billy Linxwiler's injury. Lavelle Parker was well aware of Billy's presence. In this situation Parker and his employer owed Billy the standard duty of ordinary care, regardless of his indecision about whether to bowl or not.''

We can see no distinction, in principle, between the cited case and the case under consideration here. It is possible that the trial court could have been misled by the similarity between AMI instruction 1106 and the one which it gave in this case. However it is apparent that AMI 1106 refers to the duty of a person to keep his premises in a safe condition, which is not the situation in this case.

*Two.* It is also urged by appellant that the trial court "erred in his handling of the *voir dire* of the jury panel". However, since the case must be reversed on the first point and since we find no reversible error here, we deem it unnecessary to discuss this point in detail.

It appears that appellant attempted to ask each of the jurors two questions. One, in effect, was whether he would disregard the apparent ability or inability of the defendant to pay any judgment rendered against him. The other was, in effect, if he owned any stock in or worked for any casualty or liability insurance company. The trial court, upon objection, refused to allow appellant to ask these questions at that time and in the exact way they were presented

For reasons set out below we find that the trial court committed no reversible error.

In the case of *Hogg* v. *Darden*, 237 Ark. 478, 374 S. W. 2d 184, we said:

> "It has long been recognized in this State that 'litigants in civil cases, as well as in criminal cases, have the right to examine the jurors separately in order to determine whether such jurors are subject to challenge for cause, or to elicit information on which to base the right of peremptory challenge, *subject of course to the right of the Court to control the extent of such examination, acting in its sound discretion.*' " (Emphasis ours.)

The court did not, we think, abuse its discretion under the circumstances disclosed by the record.

The court, on two occasions, told appellant he could inquire of the jury as to the content of the questions mentioned above. The court also explained that it would take up too much time to ask the questions of each juror separately—as requested by appellant. Moreover, the court asked each juror as to his or her occupation, and excused two because of their connection, in some way, with insurance companies. The court also questioned the panel at length regarding their duty to render a fair and impartial verdict under the law and the evidence. Thereafter appellant declined to ask any more questions. This, we said in the *Hogg* case, supra, "constitutes a waiver".

By this opinion we do not mean to hold that the questions appellant desired to ask the jury are, per se, inadmissible if asked in good faith subject to reasonable control by the trial court.

Reversed.

GEORGE ROSE SMITH and BROWN, JJ., concur.

LYLE BROWN. Justice, concurring. I agree this case should be reversed because of error in instructions. However, I believe the opinion fails to give proper consideration to some important points which were raised and which are most likely to occur in the event of another trial.

This cause first was called for trial on February 14, 1966. On behalf of Tatum (plaintiff), his attorney asked this question on *voir dire* examination:

"Bernard Whetstone—My question is, gentlemen of the jury, do you or any member of your family now, or have you in the past, worked for or own any stock in or have any interest in any casualty or liability insurance company?"

Counsel for Rester (defendant) immediately asked for a mistrial and the court promptly granted the motion.

Although a prior question asked is not in the record, it is apparent from the statements made by the presiding judge that the question regarding insurance was immediately preceded by another question In substance, the first question inquired of the panel whether the apparent ability or inability of the defendant to pay a judgment would affect the findings of the jury.

After granting the mistrial, the court expressed the view that the propounding of these two questions "back to back" were meant to impress upon the jury the fact that the defendant probably had insurance. This reasoning seemed to impel the trial court to grant the mistrial.

The second trial began May 25, 1966. On *voir dire* examination Mr. Whetstone inquired of juror Smitherman, in substance, if he could disregard the apparent ability or inability of a defendant to pay a judgment. Mr. Shackleford objected and the question was unanswered. The court overruled the objection and proceeded to take over the questioning of the panel. After numerous questions were asked by the court, Mr. Whetstone requested a conference at the Bench After some discussion, the judge and attorneys retired to Chambers. The judge addressed this question to Mr. Whetstone:

> "As I understood your motion, you wanted to ask each one of the jurors individually the question whether or not they would try this case and render a judgment for the plaintiff if they feel the law and evidence justified it, without considering his apparent ability or inability to pay the judgment. Now is that the question you wanted to ask?" (To which Mr. Whetstone replied in the affirmative.)

The court denied the motion and gave three reasons therefor; the reasons are summarized in italics, and the balance constitutes my comments:

1. *To propound the same question individually to 23 jurors would be too much of a burden on the jury and the court and is unnecessary.* The court was certainly acting within the bounds of discretion in so ruling.

2. *The question is improper because the ability or inability to pay a judgment cannot be involved in a case. It is not a proper thing for the jury to take into consideration. Ability or inability to pay cannot be introduced into evidence.* On this point I believe the court is in error, assuming it to have been ruled that the question is never proper under any circumstances. It is human nature for most people to sympathize with the poor, the unfortunate, or the underprivileged. Direct testimony is not necessary for jurors to reach a conclusion or impression that a party to a case has ability or inability to pay. A question of the same content is in fact not infrequently propounded by counsel for a large corporation when it is being sued by a widow or on behalf of minor children whose parent has suffered death in an accident.

To admit the propriety of this question, when asked in good faith, knowing it is a cause wherein the jury will undoubtedly reach definite impressions about the ability or inability to pay, still does not remove from the trial court all its discretion. Acting in sound discretion, the court is privileged to conclude that the question is not proper in a particular case.

3. *The purpose of this question is to indicate to the jury that liability insurance is involved, "that this man (defendant) does not have the ability to pay but he has plenty of insurance."* Herein lies the danger of coupling the two questions. And in this situation the court's discretion comes into play. The court passes on the question of good faith, knows the attorneys, their mannerisms in asking the questions, the word emphases they may use—all of which are important in discerning good faith. The appellate court does not have this advantage. So, unless from the record itself we can glean

an abuse of discretion, we should not say the trial court erred in this respect.

Lawyers have the right to question jurors, separately and individually, to determine whether they are subject to challenge for cause, or to elicit information on which to base the right of peremptory challenge. But all this is subject to the right of the court, acting in sound discretion, to control the extent of the examination. Then, too, the court would seem to have the responsibility of moving forward on questions concerning statutory qualifications. See Ark. Stat. Ann. § 39-226 (Repl. 1962).

The case and statutory law relative to *voir dire* examination are not complicated when compared to other fields of trial procedure. When a problem in fact is anticipated it can undoubtedly be settled by raising it in pre-trial conference. In those rare instances where it might not be settled in pre-trial, the record can there be made and the time and patience of jurors are not jeopardized.

GEORGE ROSE SMITH, J., joins in this concurrence.