MIC d/b/a Burger King *v.* Bryan BARRETT

92-429                                                  855 S.W.2d 326

Supreme Court of Arkansas
Opinion delivered June 21, 1993
[Rehearing denied July 19, 1993.]

*Rieves & Mayton*, by: *Martin W. Bowen*, for appellant.

*Saxton & Ayres*, by: *Clint Saxton*, for appellee.

DONALD L. CORBIN, Justice. On the evening of March 1, 1988, appellee Bryan Barrett was beaten in the Burger King parking lot on Broadway in West Memphis, Arkansas, by Franco Davis. Appellee and Covey Easley stopped at the Burger King, which was closed, to use the phone. Some employees and Franco Davis, who was not an employee of Burger King, but who was waiting to give an employee, Charles Jordan, a ride home, were inside the restaurant closing up. Mr. Easley approached the door of the restaurant and attempted to get someone inside the restaurant to let him look at a phone book. The employees refused to let Mr. Easley inside. Mr. Easley had an exchange with Mr. Davis about using the phone book. Mr. Easley felt Mr. Davis was being smart with him, although he could not hear him through the door. Mr. Easley made an obscene gesture to Mr. Davis as he returned to appellee's truck. Mr. Easley did not inform appellee

that he had made an obscene gesture to Mr. Davis when he returned to the truck. Mr. Easley asked appellee to pull around to the telephone so he could call information. Elizabeth Franklin, the manager on duty at the time, testified that Mr. Davis was hyper and asked her to let him out. Ms. Franklin said she refused to let Mr. Davis out at that time, but that she, Mr. Davis and the remaining employees all left the restaurant shortly thereafter. When the employees and Mr. Davis exited the restaurant, Mr. Easley was on the phone. Ms. Franklin told Mr. Davis and the others to go on home and that she was going to call the police. Ms. Franklin then got in her car, drove home and called the police. Mr. Davis did not go home, he opened the trunk of Mr. Jordan's car, which he had borrowed for the day, took out a stick and approached appellee's truck. Appellee noticed Mr. Davis, Mr. Jordan, and Eddie Carter, another Burger King employee, coming towards his truck, but testified he did not see a stick. Appellee began to pull away, but stopped and got out of his truck when he heard something hit it. As soon as appellee got out of his truck, Mr. Davis began beating him on the head. Although the police arrived soon after the assault began, appellee sustained severe injuries as a result of this beating.

Appellee filed suit against MIC d/b/a Burger King (hereinafter Burger King), Elizabeth Franklin, who was the manager at the time the beating occurred, Charles Jordan, and Eddie Carter. Before trial, Elizabeth Franklin, Charles Jordan, and Eddie Carter were dismissed as defendants. Appellee won at trial and was awarded $507,532.53. Appellant asserts eight points of error on appeal. All eight points of error concern jury instructions which appellant contends were either erroneously given or should have been given but were not.

In order to be timely, objections to instructions must be made either before or at the time the jury instructions are given. *Young v. Johnson*, 311 Ark. 551, 845 S.W.2d 510 (1993); Ark. R. Civ. P. 51. "Waiting to object until after the jury has been instructed on the law and has retired is untimely, for it gives the circuit court no opportunity to react to the instructions at issue or to amend them." *Id.* at 555, 845 S.W.2d at 512. We will not consider objections which are not timely made. *Id.* From the record we can determine only that appellant's objection to AMI 1106 was made as indicated by appellant prior to the jury retiring

to consider its verdict. Appellant's other objections appear in the record to have been made for the first time after the jury was charged and had retired to consider its verdict. While appellant and appellee agree their objections were originally made at an in-chambers hearing before the jury was charged, there is no record of this hearing. Since we are not able to ascertain from the record or abstract the specific objections to the remaining instructions made prior to the jury retiring to consider its verdict, these objections will not be addressed. It is appellant's duty to demonstrate error in the proceedings below and to bring up a record sufficient to demonstrate error. *Puckett* v. *Puckett*, 289 Ark. 67, 709 S.W.2d 82 (1986). Therefore, we will address only appellant's argument as to AMI 1106 because the record is insufficient to demonstrate error as to its remaining arguments.

Appellant's first argument as to the modification of AMI 1106 is moot. Appellant argued we should reverse and remand for a new trial because the trial judge failed to include the reason for the modification in the record. This failure was cured when we granted appellees' motion to settle the record and a supplemental hearing was held by the trial court during which the reason for the modification was put into the record.

Appellant next argues the trial court erred by modifying subparagraph B of AMI 1106 to add the words "and its employees" because it amounted to an incorrect statement of the law. We agree and reverse and remand for a new trial.

AMI 1106(B), which was proffered by appellant, reads:

An owner of property owes an invitee a duty to use ordinary care for his safety. On the other hand, he owes a licensee no duty until his presence on the premises is known or reasonably should be known. Then the owner owes the licensee only a duty not to cause him injury by willful or wanton conduct. If, however, the owner knows or reasonably should know that a licensee is in a position of danger, he has a duty to use ordinary care to avoid injury to the licensee.

As modified by the trial court and submitted to the jury, AMI 1106(B) read:

An owner of property *and its employees owe* an

> invitee a duty to use ordinary care for his safety. On the other hand, *an owner and its employees owe* a licensee no duty until his presence on the premise is known or reasonably should be known. Then the owner *and its employees owe* the licensee only a duty not to cause him injury by wilful or wanton conduct. If, however, the owner *or its employees know* or reasonably should know that a licensee is in a position of danger, *they have* a duty to use ordinary care to avoid injury to the licensee.

(Emphasis added).

As appellant argues, it was an incorrect statement of the law to modify AMI 1106 to provide that employees owe the same duty to an invitee or a licensee as does the owner of the property. A servant or employee is not liable for injury caused by the condition of the land absent proof that his employer has turned over the entire charge of the land to him. Since there was no proof that an employee of Burger King was put entirely in charge of the property, it was error for the court to instruct the jury that Burger King's employees were held to the same standard of care as Burger King as to an injury resulting from the condition of the property.

While we agree that the addition of the words "and its employees" to AMI 1106 results in a misstatement of the law absent proof Burger King placed any of its employees in complete control of the property, we also note that although neither party raised it, the giving of AMI 1106 was improper in this instance. AMI 1106 refers to the duty of a person to keep his premises in a safe condition, which is not at issue in this case. *See Tatum* v. *Rester*, 241 Ark. 1059, 412 S.W.2d 293 (1967) (child injured by car being backed out of carport by property owner). The note on use to AMI 1106(B) provides in pertinent part: "Use paragraph B when the injury was caused by the possessor's activities and was causally related to a condition of the premises." AMI Civil 3d, 144. "When the condition of the premises has no causal connection whatever with the injury to the plaintiff, the status of the defendant as an owner or occupier of land is irrelevant." *Tatum*, 242 Ark. 271, 412 S.W.2d 293. The act of Franco Davis beating appellee with a stick is not causally related to the condition of the premises. *See Linxwiler* v. *El Dorado Sports Center, Inc.*, 233

Ark. 191, 343 S.W.2d 411 (1961) (employee of bowling alley accidentally shot patron). Therefore, AMI 1106(B) is inapplicable in this case.

Reversed and remanded for a new trial.

GLAZE and BROWN, JJ., dissent.

Robert L. Brown, Justice, dissenting. This case turns on a unique set of circumstances. The appellant, MIC d/b/a Burger King, offered an instruction, AMI 1106, which concerns premises liability of an owner and was fundamentally inappropriate for the fact situation at hand. The appellee, Bryan Barrett, sought to modify AMI 1106, over MIC's objection, to include MIC employees and, thus, add the element of vicarious liability. The trial judge allowed the modification. MIC then proffered an unmodified AMI 1106 as the instruction which should have been given.

AMI 1106, either modified or unmodified, should not have been given in this case. It relates to premises liability of the owner and is appropriate for such matters as hidden defects on the premises, slip-and fall accidents, and the like. It is patently incorrect for situations where an owner's former employee injures an invitee or licensee by negligent conduct. We have made this distinction in our case law. *See, e.g., Tatum* v. *Rester*, 241 Ark. 1059, 412 S.W.2d 293 (1967); *Linxwiler* v. *El Dorado Sports Center, Inc.*, 233 Ark. 191, 343 S.W.2d 411 (1961). Yet, it was MIC that offered the erroneous instruction originally.

Complicating matters further is the fact that we do not have a complete record of objections made on instructions in this case. The record was settled after trial. It is clear, however, that MIC did not object to AMI 1106's being given in the first place because it offered the same instruction and then proffered it for the record. MIC only objected to the instruction in its amended form.

The problem that confronts us is that the trial judge never was apprised that a fundamentally erroneous instruction was at issue here. Rather, the argument made by MIC, according to the settled record, was that AMI 1106 was appropriate to safety of the premises, but only as it related to the liability of the owner — not to its employees. Barrett countered that liability in this case had to include the negligence of MIC employees. Thus, a

modification to include a vicarious liability element was included. Barrett argued our case of *Catlett* v. *Stewart*, 304 Ark. 637, 804 S.W.2d 699 (1991) to the trial judge, but that case turned on the duty of ordinary care owed to patrons of a restaurant and had nothing to do with premise liability or AMI 1106.

We have recently said that we will presume prejudice when an erroneous instruction is given at trial which is used to decide a case. *Skinner* v. *R.J. Griffin & Co.*, 313 Ark. 430, 855 S.W.2d 913 (1993). But we have also made it a fundamental precept for appeals on instructions that an appellant must make an argument before the trial judge, telling the judge why the instruction was wrong, in order to preserve the point for appeal. *Viking Ins. Co.* v. *Jester*, 310 Ark. 317, 836 S.W.2d 371 (1992). Here, MIC maintained to the trial judge that AMI 1106 was appropriate for this case but only with regard to the owner's duty to keep the premises safe. That was wrong. Moreover, MIC did not make the precise distinction between an owner's liability for physical defects on the premises under AMI 1106 and the duty of ordinary care that a restaurant owner and its employees owe to patrons under standard principles of negligence. Because the trial judge did not consider this distinction for the reason that it was not specifically presented to him in that form, we cannot use it as the basis for reversal in this case.

Though it appears that error occurred in the trial of this case and that the error must be presumed prejudicial, we must remain constant and adhere to our foundation principle that we will not scour the record for grounds to reverse but will do so only on the basis of issues presented to the trial judge for consideration. Here, the predicate for the majority's reversal was not raised to the trial judge.

Accordingly, I would affirm this case.

GLAZE, J., joins.