PULASKI COUNTY *v.*
ARKANSAS DEMOCRAT-GAZETTE, INC.;
Jane Doe, Intervenor

07-669                                   264 S.W.3d 465

Supreme Court of Arkansas
Opinion delivered October 4, 2007

*Karla M. Burnett*, Pulaski County Att'y, *Amanda M. Mitchell*, Asst. Pulaski County Att'y, and *Chastity D. Scifres*, Pulaski County Staff Att'y, for appellant.

*Williams & Anderson, PLC*, by: *Jess Askew, III, Clayborne S. Stone* and *Alison Dennington*, for appellee.

*J. Blake Hendrix*, for intervenor Jane Doe.

JIM GUNTER, Justice. This appeal arises from an order of the Pulaski County Circuit Court ordering certain e-mails to be released because they constitute "public records" under the Arkansas Freedom of Information Act (FOIA), codified at Ark. Code Ann. 25-19-101 et seq. (Supp. 2005). On appeal, Pulaski County argues that the circuit court erred by failing to follow the mandate issued by this court after we remanded the case on July 20, 2007, for an *in camera* review of the e-mails. Jane Doe argues that the circuit court erred in

ordering the release of certain e-mail messages, as it violates her right to privacy. She also maintains that she has standing to raise these issues under the FOIA. We affirm the circuit court's order releasing the e-mails and hold that Jane Doe has waived her privacy rights in this case.

The facts of this case are set forth at length in our July 20, 2007 per curiam opinion. *See Pulaski County v. Arkansas Democrat-Gazette*, 370 Ark. 435, 260 S.W.3d 718 (2007) (per curiam). Throughout the events at issue in this case, Pulaski County was in a contractual relationship with Government e-Management Solutions, Inc. (GEMS). Ron Quillin, Pulaski County Comptroller and Director of Administrative Services, represented Pulaski County in this contractual relationship. Jane Doe represented GEMS. Quillin and Doe entered into a romantic relationship during the course of this business relationship. Quillin was responsible for the flow of public funds from the County to GEMS. On June 4, 2007, Quillin, who had been fired from his position with the County, was arrested for allegedly embezzling approximately $42,000 from Pulaski County.

On June 14, 2007, Appellee Arkansas Democrat-Gazette, Inc., filed a complaint in the Pulaski County Circuit Court, alleging that certain e-mails were public records pursuant to the FOIA. On June 25, 2007, the circuit court ruled that the e-mails were public records and ordered them to be released to the Democrat-Gazette. On appeal, we remanded the case with instructions to the circuit court to review the e-mails *in camera*. On August 2, 2007, the trial court entered its order releasing all of the e-mails with the exception of six graphic, sexually explicit photos and seven e-mails sent on a chain of forwards.[1] Pulaski County now appeals.

## I. Jane Doe's issues

At the outset, we turn to the issue of whether Jane Doe has standing to contest the disclosure of the e-mails. Doe asserts that she has standing to raise an FOIA issue because she has a personal stake in the outcome of this proceeding. She argues that if the e-mails are released, she will suffer irreparable damage to her

---

[1] The Democrat-Gazette has not sought disclosure of either the sexually explicit photos or the forwards; thus, any issue regarding these e-mails is moot. We do not address moot issues. *Alexander v. McEwen*, 367 Ark. 241, 239 S.W.3d 519 (2006).

reputation and the e-mails could be exploited for the prurient interest of others. Further, she asserts that these messages contain personal matters that would constitute an unwarranted invasion of her constitutional right to privacy. In response, the Democrat-Gazette argues that Doe has no standing under the Arkansas FOIA because she is a citizen of Missouri.

■ The question of standing is a matter of law for this court to decide, and this court reviews questions of law de novo. *Arkansas Beverage Retailers Ass'n, Inc. v. Moore*, 369 Ark. 498, 256 S.W.3d 488 (2007). Only a claimant who has a personal stake in the outcome of a controversy has standing. *Id.* Here, Doe is not attempting to gain access to public records; she is merely trying to block the disclosure of e-mails that she sent and received. Therefore, she has a personal stake in the outcome of this case. Thus, even though she is not a citizen of Arkansas, we hold that she has standing to assert a privacy interest.

We now turn to Doe's constitutional argument. Specifically, Doe argues that disclosure of the e-mails constitutes a violation of her constitutional right of privacy as recognized in an individual's interest in avoiding disclosure of personal matters by government. *See Nixon v. Administrator of General Services*, 433 U.S. 425, 455 (1977); *McCambridge v. City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989) (citing *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869 (1977)). As the present appeal is from a bench trial, our standard of review on appeal is not whether there is substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Williams, v. Wayne Farms, LLC*, 368 Ark. 93, 243 S.W.3d 316 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are within the province of the fact-finder. *Id.*

■ In the instant case, the trial court ruled that Doe had no expectation of privacy when conversing with Quillin on a county computer or the software vendor's business e-mail. We simply cannot say that the trial court erred in this regard because the romantic relationship between Quillin and Doe was indistinguishably intertwined with the business relationship between the County and GEMS. The cases relied on by Doe are simply inapposite, as neither of those cases presents facts as peculiar as

those found in this case. Under the facts of this case, where the messages often contained both business matters and personal issues, Doe, a contractor for the County, waived any right of privacy she may have had.

Before leaving this point, we note that the circuit court found that one particular e-mail exchange between Quillin and Doe sent on March 12, 2006, beginning at 9:44 a.m., is evidence that Doe lost any expectation of privacy. The sexually explicit exchange concludes by Doe's response: "Hey now. This is work email. goofball!" Quillin then responds at 9:58 a.m.: "Delete, delete, delete . . . ." This e-mail exchange proves that Doe knew the risk that the e-mails could become public, yet she continued to e-mail Quillin on the county's computer, and therefore, lost any expectation of privacy.

### The mandate rule

Next, we turn to the sole issue raised by Pulaski County, namely that the circuit court violated our mandate by basing its conclusion on the overall context of the relationship between Quillin and Doe rather than the content of the e-mails. A lower court is bound by the judgment or decree of a higher court as law of the case and must carry the decision of the higher court into execution pursuant to the mandate issued by that court. *Pro-Comp Mgmt., Inc. v. R.K. Enters., LLC*, 366 Ark. 463, 237 S.W.3d 20 (2006). On remand, we instructed the circuit court to conduct an *in camera* review to determine if the e-mails "constitute a record of the performance of official functions that are or should be carried out by a public official or employee," thereby making them "public records" pursuant to the FOIA. *See Pulaski County, supra.* The circuit court noted in its order that "[i]t became apparent that a listing of each e-mail would not be expedient." Nevertheless, it appears that the circuit court reviewed each e-mail for content as instructed. Based on the circuit court's order, it is clear to us that the trial court followed our directive, and Pulaski County has put forth no evidence to the contrary. The record simply does not support the County's assertion that the circuit court failed to follow the mandate issued on remand.

The County argues that the circuit court further erred in basing its decision on whether e-mails were subject to disclosure on context rather than content. The record shows that the circuit court reviewed the e-mails based on content, and there is no error in that regard. Further, to the extent that the County is

arguing that the circuit court erred in its factual decisions on whether the e-mails relate solely to personal matters or whether they reflect a substantial nexus with the County's activities, and are therefore public records subject to disclosure, the County has failed to provide convincing argument that the circuit court was clearly erroneous in this regard. We will not consider an argument, even a constitutional one, when the appellant presents no convincing argument in its support. *Childers v. Payne*, 369 Ark. 201, 252 S.W.3d 129 (2007). For these reasons, we will not reach the merits of Pulaski County's arguments.

Affirmed.

DANIELSON and IMBER, JJ., concur in part and dissent in part.

GLAZE, J., dissents.

PAUL E. DANIELSON, Justice, concurring in part, dissenting in part. Despite any claims that the "ship has already sailed," I write to make clear that I disagree with the majority's handling of this case from the very beginning. While I concur with the majority's decision that Pulaski County and the intervenor have not demonstrated that the circuit court's findings were clearly erroneous, I continue to adhere to my original opinion that Pulaski County and the intervenor failed to rebut the statutory presumption that the contested emails constituted public records in the initial hearing before the circuit court. In addition, both Pulaski County and the intervenor, by failing to proffer the contested emails to the circuit court during the initial hearing, failed to make a record sufficient to preserve their arguments for appeal, from the beginning. For these reasons, I concur in part and dissent in part.

Initially, I must point out that, from the beginning, the majority completely lost sight of and ignored the Arkansas Freedom of Information Act (FOIA) statutory scheme and our case law. The remand of this matter to the circuit court for an *in camera* review was erroneous and completely disregarded the rebuttable presumption established by the General Assembly in Ark. Code Ann. § 25-19-103(5)(A) (Supp. 2005).[1] Section 25-19-103(5)(A) defines "public records" and establishes the presumption:

---

[1] In doing so, the majority completely ignored our long-standing tenet of law that it is the appellant's duty to bring up a record sufficient to demonstrate error. *See, e.g., MIC v. Barrett*, 313 Ark. 527, 855 S.W.2d 326 (1993).

(5)(A) "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium required by law to be kept or otherwise kept *and that constitute a record of the performance or lack of performance of official functions* that are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. *All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.*

Ark. Code Ann. § 25-19-103(5)(A) (Supp. 2005) (emphasis added). The statute makes very clear that, while presumed a public record, an email will not constitute a public record if it does not constitute a record of an employee's performance or lack of performance of official functions.

Here, the emails at issue were presumed to be public records; thus, it was presumed that the emails were writings required to be kept or otherwise kept *and* were a record of the performance or lack of performance of official functions by a government employee. In order to prohibit the release of the emails, Pulaski County and the intervenor had to rebut that presumption, but they did not.[2] Thus, the emails were presumed to be public records, which were subject to disclosure, and the circuit court correctly so held in the initial hearing. In short, the circuit court was correct the first time.

However, instead of affirming the circuit court's ruling in this matter, the majority remanded, giving Pulaski County and the intervenor a second bite at the apple. That is the point at which this case went awry, and the reason I continue to dissent in part.

Nonetheless, with respect to the merits, and assuming that Pulaski County and the intervenor had attempted to rebut the

---

[2] While one might argue that Pulaski County attempted to rebut the presumption when it requested the circuit court to review the emails in the initial hearing, Pulaski County failed to make its record when it failed to proffer the emails it contested and that the circuit court declined, at that time, to review. Thus, the emails were never made a part of the record during the initial hearing. In order to make a record, one must make a proffer. The failure to proffer evidence so that this court can determine prejudice precludes review of the evidence on appeal. *See Duque v. Oshman's Sporting Goods Servs., Inc.,* 327 Ark. 224, 937 S.W.2d 179 (1997). Moreover, as already stated, it is the appellant's duty, and not that of the circuit court, to demonstrate error in the proceedings below and to bring up a record sufficient to demonstrate error. *See, e.g., MIC v. Barrett,* 313 Ark. 527, 855 S.W.2d 326 (1993).

presumption during the initial hearing, I would affirm the circuit court's decision, which was rendered upon remand.[3] I must emphasize that I am in no way stating that *every* email sent from or delivered to a government computer or government email account constitutes a public record under the FOIA, codified at Ark. Code Ann. §§ 25-19-101 – 25-19-109 (Repl. 2002 & Supp. 2005). So the circuit court found in its initial order, wherein it said:

> The Court wants to make clear, however, that the facts in this case are determinative as to the finding that these emails are public records. In no way is this Court finding that all emails on Pulaski County computers are, in fact, public records. In short, those decisions must be made on a case by case basis.

That being said, it is clear to me, *under the facts of this case*, and as the circuit court found, that the emails at issue constituted public records and were subject to disclosure under the FOIA. Thus, in an effort to provide guidance for future FOIA cases and in an effort to prevent similar time delays in such cases, I believe some analysis is necessary to support my position that the circuit court's decision was not clearly erroneous.

As already stated, a public record is a (1) record, required to be kept or otherwise kept, (2) that constitutes a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee. *See* Ark. Code Ann. § 25-19-103(5)(A). The emails at issue were kept, such that the first element of the definition was met. At issue in the instant case, and in most FOIA cases, is whether or not the emails at issue were a record of performance or lack of performance of official functions by Quillin. *Based on the facts of this case*, I would hold that the emails were.

It is further my opinion that, once a public agency has attempted to rebut the presumption that a record was, or records were, a public record, which necessarily requires the introduction of the challenged records into the record, it is incumbent on the circuit court to examine *each* contested record to determine whether or not it constitutes a public record, under the definition

---

[3] The same holds true for the proceedings on remand; Pulaski County and the intervenor did not attempt to rebut the presumption, even after being given a second chance to do so by the majority of this court.

in the statute.[4] That is because each record must constitute a record of performance or lack of performance of official functions in order to be disclosed under the FOIA.

In this case, the circuit court, on remand, reviewed the emails and found that the emails reflected on the performance of official functions by Quillin. Further, it found that all of the emails should be released because they constituted a public record of the performance of official functions and because it was impossible to discern which particular email or portion of email was strictly personal and bore no relationship to business. The circuit court, however, did find that certain emails containing explicit photographs were not subject to release and that seven other contested emails were not public records subject to disclosure.[5]

I agree with the circuit court, but for different reasons. Much has been made of whether many of the emails were personal, private, or sexually explicit. That is of absolutely no moment as such designations are simply irrelevant in the context of a FOIA case. A review of the statutory scheme reveals no consideration as to whether the information, the disclosure of which is contested by the public agency, is personal, private, or sexually explicit. The *sole* consideration in determining whether the record is a public record and one subject to disclosure is whether the record itself constitutes a record of the performance or lack of performance of a public official. Any other consideration is erroneous.

A review of the circuit court's findings with respect to the emails in the instant case, the disclosures of which were challenged by Pulaski County and the intervenor, reveals that each email was a recording of Quillin's performance or lack of performance in his official function. Each contested email's content demonstrated Quillin's involvement, outside of work, with an individual whose job was, at least in part, dependent upon Pulaski County's contract with her employer, a contract which was overseen by Quillin.[6] For

---

[4] This of course presumes that the agency has proffered the records it does not consider to be public to the circuit court for such a determination, which was clearly not the case during the initial hearing in the case at hand.

[5] The circuit court's decision as to those records has not been challenged by either party, as recognized by the majority.

[6] As I have said, my opinion is premised on the facts of *this* case. Were a public official or employee to have a relationship of sorts with someone not so closely intertwined to the expenditure of public funds, sending emails similar to the ones at issue here, I could not say

that reason, I agree with the circuit court's conclusion and would affirm the order of disclosure rendered by the circuit court, as the majority does.[7]

Our General Assembly has clearly pronounced the necessity of the FOIA to review public business and how it is conducted:

> It is vital in a democratic society that *public business* be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Toward this end, this chapter is adopted, making it possible for them or their representatives to learn and to report fully the activities of their public officials.

Ark. Code Ann. § 25-19-102 (Repl. 2002) (emphasis added). As we have said, our role in determining whether something constitutes a "public record" is limited to interpreting the FOIA statute. *See, e.g.,* *Fox v. Perroni*, 358 Ark. 251, 188 S.W.3d 881 (2004). To that end, we liberally construe the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. *See Arkansas Dep't of Fin. & Admin. v. Pharmacy Assocs., Inc.*, 333 Ark. 451, 970 S.W.2d 217 (1998).

In the present day and age, the internet and electronic technology are prevalent and their use is ever increasing in government business, which results in issues such as the one in the instant case. For that reason, the General Assembly has clearly contemplated that public records may exist in electronic form. Whether the records at issue are in electronic or paper form, our role remains the same. We are limited to reviewing and interpreting the FOIA statutes, as it is not our job to create public policy. *See, e.g., Brewer v. Poole*, 362 Ark. 1, 207 S.W.3d 458 (2005).

---

that those emails would constitute a public record under section 25-19-103(5)(A), rendering them subject to disclosure. Here, it is the fact that each email's content demonstrated a relationship between Quillin and someone employed by a county vendor, whose account and contract were overseen by Quillin, that rendered each email between Quillin and the intervenor records of Quillin's performance or lack of performance of official functions.

[7] While recognizing that the issue is not before us, I would have also ordered the disclosure of what have been termed the "sexually explicit" emails, under the facts of this case. As already stated, there is no mention or exception for sexually-explicit records contained within the FOIA. Thus, they too constituted a record of Quillin's performance or lack of performance, for the same reasons as the other emails.

In sum, the majority's erroneous actions in this case via its initial *per curiam* order, which gave Pulaski County and the intervenor yet another chance to rebut the statutory presumption and which they failed to do yet again, has resulted in a delay in this case of more than three months and counting since the original request for disclosure. This clearly flies in the face of the purpose of Arkansas's FOIA. Nonetheless, it is my opinion, were I to reach the merits, that based on the exceedingly clear language of the statute and the uncontroverted facts of this case, the contested emails at issue, excepting the seven emails excluded by the circuit court from disclosure, were indeed records of Quillin's performance or lack of performance of official functions and, therefore, constituted public records subject to disclosure under the FOIA. As a result, the circuit court's findings were not clearly erroneous. However, because I continue to believe that Pulaski County and the intervenor failed to rebut the statutory presumption during the initial hearing in this matter and failed to bring up a proper record for review after that hearing, I must respectfully dissent in part and concur in part.

IMBER, J., joins.

TOM GLAZE, Justice, dissenting. The Arkansas Democrat-Gazette made its request for the Pulaski County email records generated by its employee, Ron Quillan, three and a half months ago. The newspaper still has not received them. The FOIA law is designed so the custodian of the records shall, within twenty-four hours of the receipt of a request for the examination or copying of records, make efforts to the fullest extent possible to determine whether the records are exempt from disclosure and make efforts to notify the persons making the request and the subject of the record of that decision. *See* Ark. Code Ann. § 25-19-105(c)(3)(A) (Repl. 2002); *see also* Ark. Code Ann. § 25-19-107(b) (Repl. 2002) (setting out the process for expediting judicial review for those whose requests for records have been denied). Pulaski County has done nothing but delay access to the records, contrary to the intent of the Act.

As pointed out in Justice Paul Danielson's opinion, the majority court exacerbated the delays in this case when it handed down a 4-3 *per curiam* opinion on July 20, 2007, remanding the matter to the circuit court for an *in camera* review. Justice Danielson is correct in saying that the majority completely lost sight of and ignored the FOIA's statutory scheme and our case law, when

Pulaski County never attempted to rebut the circuit court's findings and ruling that the emails in question were public records.[1]

In my view, this simple case became complex when the majority court attempted to place a square peg in a round hole. In essence, what the majority has done is to permit a public employee to place pornographic material on a public computer, where it is presumed to be a public record, but, by allowing the employee to call the material "personal" or "private," has enabled that public employee to subvert the purpose and intent of the Act. Such an employee's inappropriate conduct should not be protected under any circumstances. If the majority had ruled, as it should have, that salacious photographs and material placed on the county's computer by a county employee during working hours constitute public records, the taxpayers could readily learn how that employee performs his work and conducts the public's business. It also is reasonable to believe that, when such inappropriate conduct is subject to public exposure, that abuse will end.

The Freedom of Information Act provides that "[i]t is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy." *See* Ark. Code Ann. § 12-19-102 (Repl. 2002). The majority's overly prolonged treatment of this case has completely subverted the true intent of the Arkansas Freedom of Information Act; indeed, instead of meeting the goals and objectives of the FOIA, this court's actions have resulted in an absurd application of the Act's purpose.

Oh, the irony of it all!

---

[1] Justice Danielson's opinion appears to show a willingness to assume Pulaski County made some attempt to rebut the presumption of public records at the initial hearing. I disagree with any such interpretation of the facts.