Cite as 2021 Ark. 230

# SUPREME COURT OF ARKANSAS

No. CV-20-568

<table>
<tr><td></td><td>**Opinion Delivered:** December 16, 2021</td></tr>
<tr><td>MARK MYERS AND<br>JANE DOE<br><br>                  APPELLANTS<br><br>V.<br><br>AMY FECHER, IN HER OFFICIAL<br>CAPACITY AS SECRETARY OF<br>TRANSFORMATION AND SHARED<br>SERVICES<br><br>ARKANSAS DEMOCRAT-GAZETTE,<br>INC.<br><br>                  APPELLEES</td><td>APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT<br>[NO. 60CV-20-266]<br><br>HONORABLE CHRISTOPHER<br>CHARLES PIAZZA, JUDGE<br><br><br><u>REVERSED AND REMANDED</u>.</td></tr>
</table>

**KAREN R. BAKER, Associate Justice**

This appeal stems from a September 15, 2020 order of the Pulaski County Circuit Court ordering certain messages to be released because they constitute "public records" pursuant to the Arkansas Freedom of Information Act ("FOIA"), codified at Ark. Code Ann. §§ 25-19-101 et seq. (Repl. 2014 & Supp. 2021). Appellants Mark Myers and Jane Doe appeal from the circuit court's order requiring appellee Amy Fecher ("Fecher"), in her official capacity as Secretary of Transformation and Shared Services ("TSS"), to disclose communications between Myers and Doe pursuant to the FOIA request of appellee Arkansas Democrat-Gazette, Inc. (the "ADG"). Myers was employed by the State as director of the

Department of Information Systems ("DIS")[1] from January 2015 until November 2016. Jane Doe was employed until August 2017 by a technology company that did business with DIS. While Myers and Doe were employed in their respective positions, they developed an intimate personal relationship and communicated frequently about personal and family issues, as well as business-related topics. They communicated via email and text, as well as through a private, third-party cloud-based application, Blackberry Messenger. In November 2016, Myers resigned from his employment with DIS after a legislative audit disclosed that he was under investigation based on allegations that he had improperly authorized $8.2 million for the purchase of equipment from a vendor that was represented by Doe, someone with whom he had a romantic relationship.

The detailed procedural history of this matter is as follows. On June 7, 2017, the ADG submitted its initial FOIA request. The request sought any correspondence, including emails and texts messages between former DIS Director Myers and any representatives of Cisco Systems since January 1, 2015. The following day, DIS denied that request, citing Ark. Code Ann. § 25-19-105(b)(6), which temporarily exempts public records that are part of an ongoing criminal investigation.

On December 16, 2019, subsequent to the criminal investigation, the ADG verbally renewed its FOIA request made in June 2017 to TSS. On December 31, 2019, TSS notified Myers that it planned to release the documents to the ADG on January 2, 2020, and provided

---

[1]As part of the 2019 government reorganization, DIS was renamed the Division of Information Systems and was made part of TSS.

Myers with the FOIA statute and the unredacted documents. Further, on January 2, TSS advised Myers that it would not release the Blackberry Messenger messages in the event Myers sought an opinion from the Attorney General's Office. On January 3, Myers sought an opinion from the Attorney General's Office related to the release of records. Also on January 3, TSS produced all responsive documents to the ADG, with the exception of the Blackberry Messenger messages. On January 8, 2020, the Arkansas Attorney General issued her opinion, which declined to address the merits of Myers's request, finding that Myers's request was outside the scope of her statutory authority.

On January 9, Myers filed suit in the Pulaski County Circuit Court, seeking a temporary restraining order to prevent Fecher from releasing the Blackberry Messenger messages. On January 10 and 17, respectively, the ADG and Doe both filed motions to intervene. Also on January 17, Myers filed a complaint for declaratory judgment and injunctive relief. Myers alleged that "during the course of Myers's friendship with Doe, they talked openly about personal issues, things that occurred with various family members, and other personal and intimate details of their lives. Some of the personal communications between Myers and Ms. Doe occurred via a cloud-based messenger program facilitated by Blackberry. These messages were traditionally backed up on a server belonging to DIS for a period of 90 days and then deleted. After Myers's voluntary resignation from DIS the State of Arkansas and other agencies investigated some of Myers's procurement decisions. As a part of that investigation the Blackberry messages at issue in this complaint were saved. The messages were kept because Ms. Doe was a vendor with DIS that Myers and the agency did

business with. The Messages contain deeply personal exchanges, musings and information that could potentially create significant embarrassment to him and his acquaintance if they are made public." Myers alleged that the information contained in the messages would cause personal upheaval to Myers's friends and family which could not be remedied or justly compensated for; once the messages are released they will likely be printed in Arkansas newspapers and blogs. Myers sought declaratory judgment that the messages are not public documents; declaratory judgment that the messages fall within a FOIA exemption; and injunctive relief permanently enjoining Fecher from releasing the messages at issue.

On January 17, 2020, the circuit court conducted an initial hearing and agreed to enter a protective order and granted intervention to Doe and the ADG. On January 24, the circuit court entered an order granting intervention; set a briefing schedule and hearing date; and prohibited the disclosure of the messages and Doe's identity to anyone other than counsel pending a final order in the proceedings. On January 28, Doe filed a complaint requesting declaratory judgment that the messages are not "public records" as defined by the FOIA; asserting Doe's constitutional right to privacy in the messages that outweighed any public interest in them or in her identity; and requested injunctive relief to prevent disclosure of her identity and the content of the messages.

The parties filed their respective briefs. Myers and Doe argued that the approximately three thousand Blackberry Messenger messages were not "public records" under FOIA because they did not "constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee . . . ."

4

Ark. Code Ann. § 25-19-103(7)(A). Rather, they asserted that the messages were private communications unrelated to the performance of official functions. The ADG contended that the messages were public records because they were kept by DIS and connected to public business. The ADG further contended that Doe did not show that she had a constitutional right to privacy sufficient to require that the messages be withheld.

Subsequent to the parties' briefing, on February 28, 2020, the circuit court held a hearing and the parties argued their respective positions. On July 20, 2020, the circuit court entered its order finding that it had reviewed the messages and that the business and personal matters were so intertwined that all of the messages were "public records" and the public has a right to their content. On July 31, Doe filed a motion for clarification and associated relief. On September 15, the circuit court denied the motion and dismissed Myers's amended complaint. In that same order, the circuit court found that Doe did not have a constitutional privacy interest in the messages because of their intermingled nature. The order directed Fecher to release the records at issue within ten business days of its order.

Myers and Doe both filed requests to stay the judgment pending appeal and on September 29, 2020, the circuit court denied the motions for stay but granted an additional ten business days to release the documents. Both Myers and Doe timely appealed. On October 7, 2020, we granted a stay of judgment pending appeal.

Myers presents three points on appeal: (1) the circuit court erred by judging the public-versus-private nature of the messages based on the broad context of the relationship of the correspondents rather than the specific content of each message; (2) the circuit court's

5

determination that the messages are not private in nature is not supported by substantial evidence; and (3) the circuit court erred by not properly balancing Myers's privacy interests against public interest. Doe presents two points on appeal: (1) the circuit court erred in finding that the records were "public records" pursuant to FOIA; and (2) the circuit court erred in finding that the public interest outweighed Doe's constitutional right to privacy in the context of her personal messages and her identifying information. We reframe the five issues presented by Myers and Doe as follows: (1) the circuit court erred in finding that the records were "public records" pursuant to FOIA; and (2) the circuit court erred in finding that the public interest outweighed privacy rights. For the reasons that follow, we reverse and remand this matter to the circuit court.

## I. *Standard of Review*

In this case, we must determine whether the messages at issue are "public records" within the parameters of FOIA. Thus, we are tasked with interpreting the statutory provisions of FOIA and the disclosure of records; in particular Ark. Code Ann. § 25-19-103(7)(A) and "public records." "It is for this court to determine the meaning of a statute. *Arkansas Dept. of Health v. Westark Christian Action Council*, 322 Ark. 440, 910 S.W.2d 199 (1995). . . . We liberally interpret the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. *Id*. Furthermore, this court broadly construes the Act in favor of disclosure. *Id*." *Fox v. Perroni*, 358 Ark. 251, 256, 188 S.W.3d 881, 885 (2004). Further, "we review findings of fact under a clearly erroneous standard of review. *Ligon v. Stewart*, 369 Ark. 380, 255 S.W.3d 435 (2007). A finding is clearly

6

erroneous when the appellate court is left with a definite and firm conviction that a mistake has been committed. *See Covenant Presbytery v. First Baptist Church*, 2016 Ark. 138, 489 S.W.3d 153." *Dep't of Arkansas State Police v. Keech Law Firm, P.A.*, 2017 Ark. 143, at 3, 516 S.W.3d 265, 268. Facts in dispute and determinations of credibility are within the province of the fact-finder. *See Pulaski Cty. v. Arkansas Democrat-Gazette, Inc.*, 371 Ark. 217, 219, 264 S.W.3d 465, 466 (2007) ("*Pulaski II*").

With these standards, we turn to the merits of this appeal.

II. *Points on Appeal*

For their first point on appeal, Myers and Doe contend that the circuit court erred in finding that the records were public records pursuant to FOIA. The circuit court found in pertinent part: "All the messages at issue in this proceeding are public records. . . . The messages are kept for purposes of the FOIA because they are in the possession of the state agency. . . . The messages reflect the performance or lack of performance of official functions because they inextricably intertwine personal and public-business matters."

Myers and Doe contend that the messages were not "public records" under the FOIA because the messages do not constitute a record of the performance or lack of performance of official functions of a public official or employee. Instead, they assert that the messages were private communications unrelated to the performance or nonperformance of official functions. They assert that many of the messages are strictly personal in nature and not business related. Myers and Doe further contend that the messages were simple to segregate and make a determination as to each message as opposed to the circuit court's determination

7

based on the messages as a whole. Relying on *Pulaski County v. Arkansas Democrat-Gazette*, 370 Ark. 435, 260 S.W.3d 718 (2007) ("*Pulaski I*"), and *Pulaski II*, *supra*, Myers and Doe contend that the circuit court failed to conduct an effective in camera review and determination regarding the classification of each of the messages and erred in its finding that the messages in this case were "public records." They assert that the circuit court was erroneous to conclude all of the messages are "public records" because the messages do not inextricably intertwine business and personal matters as to render the content of each separate communication irrelevant. On this basis, Myers and Doe urge this court to reverse and remand the matter to the circuit court.

At issue is FOIA and its application. Arkansas Code Annotated section 25-19-105(a)(1)(A) provides in pertinent part: "[e]xcept as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying." Ark. Code Ann. § 25-19-103(7)(A) "Definitions," defines "public records" as:

> (7)(A) "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium required by law to be kept or otherwise kept and that constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee, a governmental agency, or any other agency or improvement district that is wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.

In *Pulaski I* and *Pulaski II*, we addressed a FOIA request for emails in the possession of Pulaski County under circumstances that were similar to those in the case before us. In

*Pulaski I*, the former Pulaski County Comptroller and Director of Administrative Services, Ronald Quillin, was arrested for embezzling thousands of dollars from the County. *Pulaski I*, 370 Ark. 435, 260 S.W.3d 718. During the investigation, it was also discovered that while employed with the County, Quillin was engaged in a romantic relationship with an employee of a vendor to the County. The ADG submitted a FOIA request to the Pulaski County Attorney asking her to disclose all email and other recorded communication between Quillin and the employees of the vendor during a two-year time period. *Id.* Although Quillin had deleted the emails contained on his computer prior to his termination, Pulaski County had the deleted files restored prior to the FOIA request. The County released some, but not all, of the email correspondence, contending that certain emails were not "public records" within the meaning of Ark. Code Ann. § 25-19-103. ADG filed suit. Without examining the emails individually, the circuit court initially concluded that all of the requested emails were "public records." On appeal, we remanded for the circuit court to conduct an in camera review of the emails to determine if they "'constitute a record of the performance of official functions that are or should be carried out by a public official or employee' thereby making them 'public records' pursuant to the FOIA." *Id.* at 446, 260 S.W.3d at 726. In establishing this procedure, we explained that "even with the statutory presumption, it is still necessary to examine the facts concerning e-mails on a case-by-case basis." On remand in *Pulaski I*, the circuit court reviewed the emails in camera as directed by this court, and we affirmed the circuit court, holding the disclosure of messages was supported because the record showed

9

that "the circuit court reviewed the e-mails based on content, and there is no error in that regard." *Pulaski II*, 371 Ark. at 221, 264 S.W.3d at 468.

Turning to the circuit court order before us, our review demonstrates that the circuit court found that "it had reviewed in camera each of the messages at issue[,]" the messages inextricably intertwined personal and business matters; and the messages were all "public records." Therefore, the circuit court employed the proper analysis—that is, the circuit court performed an in camera review of the content of the messages.

Having determined that the circuit court correctly reviewed the messages in camera in compliance with *Pulaski I*, we turn to whether the circuit court correctly concluded that all of the messages were "public records."[2] Myers and Doe contend that the circuit court did not conduct the detailed review required by *Pulaski I*; rather, the circuit court's review fell short of *Pulaski I*. Further, they argue that the circuit court erred in its interpretation finding that the messages fall within the statutory definition of "public records." We agree and reverse and remand this matter.

In this case, unlike *Pulaski I*, the circuit court performed the required in camera review of the messages at issue and found that the messages could not be separated. However, in reviewing the plain language of Ark. Code Ann. § 25-19-103(7)(A), the content of each record considered for disclosure must be reviewed to determine whether it reflects "the performance or lack of performance of official functions that are or should be carried out by

---

[2]We decline ADG's invitation to overrule *Pulaski I* and *Pulaski II*.

10

a public official or employee" and therefore qualifies as a "public record." Ark. Code Ann. § 25-19-103(7)(A). Here, because these messages are individual, sent on different days, and sent at different times, the messages are not all interrelated and inextricably intertwined as found by the circuit court. Rather, the messages in this case are capable of being sorted into private- and public-record categories.[3] Therefore, the circuit court clearly erred by not determining whether each individual message met the definition of a "public record."

Accordingly, based on the plain language of Ark. Code Ann. § 25-19-103(7)(A), we reverse and remand this matter for the circuit court to perform a detailed content-based analysis and segregate the messages to determine whether the messages fall within the FOIA definition of "public records." *See Pulaski I.* Because we reverse and remand the circuit court's finding that all of the messages were "public records," we do not reach the remaining arguments. On remand, once the circuit court has determined which, if any, individual messages are "public records," Myers and Doe may raise their right-to-privacy arguments and the circuit court must conduct the appropriate weighing test for each item before ordering disclosure. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

Special Justice EMILY WHITE joins in this opinion.

---

[3]In oral argument, ADG tacitly conceded that the messages could be separated by stating that before the circuit court, ADG agreed that certain messages were not subject to disclosure pursuant to FOIA.

WOOD, J., concurs.

WEBB, J., dissents.

WOMACK, J., not participating.

**RHONDA K. WOOD, Justice, concurring**.  I think the messages are public records under a plain reading of the Arkansas Freedom of Information Act. *See* Ark. Code Ann. § 25-19-103(7); *see also Pulaski Cty. v. Ark. Democrat-Gazette, Inc.*, 370 Ark. 435, 450–51, 260 S.W.3d 718, 728–29 (2007) (Imber, J., dissenting). But I would still reverse and remand because the circuit court's finding that "Doe's constitutional privacy interest is not sufficient to shield [any of] the records from disclosure" was clearly erroneous. Without a hearing, the circuit court lacked the necessary evidence to perform the correct constitutional analysis.

Doe's constitutional claim requires a thorough analysis that begins with sorting the messages Doe seeks to keep private or confidential and then deciding (1) whether those messages can be kept confidential and (2) whether a reasonable person would find them embarrassing or harmful if they were disclosed. *See McCambridge v. City of Little Rock*, 298 Ark. 219, 228–32, 766 S.W.2d 909, 913–915 (1989). After the circuit court has culled Doe's personal records, it must weigh Doe's privacy interest in each record against the State's interest in disclosing the messages under FOIA and decide whether Doe waived any privacy interests. *Id.*; *Pulaski Cty. v. Ark. Democrat-Gazette, Inc.*, 371 Ark. 217, 264 S.W.3d 465 (2007). This may be time-consuming, but it should not deter the circuit court from performing this analysis.

Certain information contained in the messages is personal and has no public value. Indeed, the parties were apparently willing to agree to the nondisclosure of certain messages before the circuit court ruled. But other information will likely require testimony and more pointed arguments by the parties. Therefore, I would reverse and remand for a hearing and an application of the constitutional right-to-privacy analysis under *McCambridge*, 298 Ark. at 228–32, 766 S.W.2d at 913–15.

**BARBARA W. WEBB, Justice, dissenting**. We have said time and time again that FOIA should be broadly construed in favor of disclosure and exemptions narrowly in order to counterbalance the self-protective instincts of the governmental bureaucracy. *See Ark. Gazette Co. v. Goodwin*, 304 Ark. 204, 208, 801 S.W.2d 284, 286 (1990) (Price, J., concurring) (citing *McCambridge v. City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989)). It is vital in a democratic society that public business be performed in an open and transparent manner so that the electors are well informed of the performance of government officials. *City of Fayetteville v. Edmark*, 304 Ark. 179, 184, 801 S.W.2d 275, 278 (1990). FOIA establishes the right of the public to be fully apprised of the conduct of public business. *Id.* This right to disclosure is the general rule and secrecy is the exception. *Ark. Gazette Co. v. S. State Coll.*, 273 Ark. 248, 250, 620 S.W.2d 258, 259 (1981). Disclosure is favored when a romantic or personal relationship between two persons is indistinguishably intertwined with the business relationship between the government and the third party. *Pulaski Cty. v. Ark. Democrat-Gazette, Inc.*, 370 Ark. 435, 443, 260 S.W.3d 718, 724 (2007) (citing *Johninson v. Stodola*, 316

Ark. 423, 872 S.W.2d 374 (1994); *Gannett River States Publ'g Co. v. Arkansas Indus. Dev. Comm'n*, 303 Ark. 684, 799 S.W.2d 543 (1990)).

The messages in this case make it clear that the personal relationship of Doe and Myers are not vague nuances but intermingled and intertwined with, and inseparable from, their professional one. It is disturbing to view the relationship dynamics of Doe and Myers while considering that during the times they were engaged in this conduct, Myers was a policy and decision-maker at DIS who awarded an $8.2 million contract to Doe's employer. Contrary to Doe and Myer's claims, this is the exact type of public record and information that should be disclosed under FOIA. The circuit court did not err when it found the same. Therefore, I respectfully dissent.

*Maximillan R. X. Sprinkle*, for separate appellant Mark Myers.

*Lassiter & Cassinelli*, by: *Erin Cassinelli*, for separate appellant Jane Doe.

*Steel, Wright, Gray PLLC*, by: *Alec Gaines*, for separate appellee Arkansas Democrat-Gazette, Inc.